## YATES *v.* JONES NATIONAL BANK.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 230.  Argued March 8, 11, 1907.—Decided May 13, 1907.

If one of the plaintiffs in error does not furnish a cost bond, appear by counsel, or file any brief in this court, he will be presumed to have abandoned the prosecution of the writ and it will be dismissed as to him.

Where in the trial and appellate courts an immunity was claimed under § 5239, Rev. Stat., as to the rule of liability to be applied to directors of a national bank and such immunity was denied, this court has jurisdiction to review the judgment under § 709, Rev. Stat., even if in other respects it might not have jurisdiction.

Where a statute creates a duty and prescribes a penalty for its non-performance the rule prescribed by the statute is the exclusive test of liability.

The National Banking Act as embodied in § 5239, Rev. Stat., affords the exclusive rule by which to measure the right to recover damages from directors, based upon a loss resulting solely from their violation of a duty expressly imposed upon them by a provision of the act; and that liability cannot be measured by a higher standard than that imposed by the act.

Where by a statute a responsibility is made to arise from its violation knowingly, proof of something more than negligence is required and that the violation was in effect intentional.

105 N. W. Rep. 287, reversed.

THE facts are stated in the opinion.

*Mr. Halleck F. Rose* and *Mr. J. W. Deweese,* with whom *Mr. Frank E. Bishop* was on the brief, for plaintiffs in error in this case and in Nos. 231, 232 and 233 argued simultaneously herewith:[1]

<hr>

[1] See p. 181, *post.*

If defendants acting in their official capacity as directors of the Capital National Bank mismanaged the bank and wasted its assets by reason of their neglect so that thereby the bank became insolvent, the damage resulting was an asset of the bank, and could not be recovered by the individual depositors who lost money in the failure of the bank, but only by the bank or its receiver. *Conway* v. *Halsey,* 44 N. J. Law, 463, 464; *Kennedy* v. *Gibson,* 8 Wall. 506; *Cockerell* v. *Cooper,* 86 Fed. Rep. 13; *Horner* v. *Henning,* 93 U. S. 228.

If otherwise, then every other creditor as well as every stockholder of the bank could, for the same reasons, recover from these defendants, so that (*Smith* v. *Hurd,* 12 Metcalf, 371) there might be as many actions and recoveries as there were creditors or shareholders for one and the same default of the directors. This would defeat the policy of the national banking act, providing for a ratable distribution of all of the assets among the various creditors, and the assets in the nature of such damage would be wasted in fruitless and expensive litigation.

In the passage of the national banking act Congress provided for one complete system for the government, control and management of national banks.

No state legislature, nor any state court, can in any manner interfere with the system adopted, nor the purposes for which national banks are organized, nor divert or change the distribution of the assets of a national bank in a manner that would conflict with the provisions of the national banking act. That which is beyond the plane of state jurisdiction by direct legislation cannot be brought within such plane by indirection, and therefore the directors of a national bank cannot be held by a state court responsible for acts done in their official capacity, so as to enforce a different liability from that imposed upon them by the National Banking Act. If that were permitted it would be possible to control or nullify a United States law and prevent the enforcement of its provisions. *In re Waite,* 81 Fed. Rep. 371; *Cook County National*

*Bank* v. *United States,* 107 U. S. 448; *Leisy* v. *Hardin,* 135 U. S. 100; *Bank* v. *Dearing,* 91 U. S. 29.

If the judgment can be sustained on account of fraud and deceit in the making and publishing of the reports, the directors who attested the reports cannot be deprived of the protection given to them as directors of a national bank by § 5239 of the national banking act, which grounds their liability upon guilty knowledge of acts done in violation of said law.

The reports were made and attested as required by § 5211, Rev. Stat., being a part of the act governing national banks for the purpose of showing the condition of the bank. It was made the duty of the managing officers of the bank who prepared the reports to verify the same by their oaths, and the law required that when thus made and verified, they should then be attested by three directors.

These actions are personal actions against the individual directors for damages growing out of their alleged violation of their duties under the law and the by-laws of a national bank.

By § 5239, the directors were made personally liable for damages sustained by the bank, or any other person where they "knowingly violated, or knowingly permitted" the officers to violate any of the provisions of the national banking act.

The protection of the law governing the liability of the defendants for acts done in their official capacity is a substantial right, and the courts should be astute not to permit devices to become successful which are used for the very purpose of destroying that right. *Arapahoe Co.* v. *Railroad Co.,* 4 Dill. 277.

The state courts are as firmly bound by the laws of Congress as are the Federal courts.

The Constitution and laws of the United States are as much a part of the law of each State and as binding upon its authorities and people, as its own local constitution and laws. *Farmer's National Bank* v. *Dearing,* 91 U. S. 29.

*Mr. Lionel C. Burr* and *Mr. John J. Thomas*, with whom *Mr. Charles L. Burr, Mr. Richard S. Norval* and *Mr. William B. C. Brown* were on the brief, for defendants in error in this case and in Nos. 231, 232 and 233 argued simultaneously herewith:[1]

An action for deceit may be maintained against the directors of a bank by depositors induced to become such by false representations or statements of the bank's condition made by such directors.

The directors of a bank who publish false statements of its condition thereby represent that the matters of fact therein stated are within their personal knowledge, and, if they have no such knowledge, the statement is knowingly false.

While there must be scienter, this does not mean actual knowledge, and where the representation is of a fact, made by one in position to know, whose duty it is to know, or where it would constitute gross negligence not to know, such knowledge will be conclusively presumed. *Prescott* v. *Haughey*, 65 Fed. Rep. 653; *Gerner* v. *Thompson*, 74 Fed. Rep. 125; *Bank of Hillsboro* v. *Thomas*, 28 W. L. B. (Ohio) 164; *Solomon* v. *Bates*, 118 N. Car. 312; *Bartholomew* v. *Bentley*, 15 Ohio, 659; 45 Am. Dec. 596, 598.

As to the duty of the directors to know, see: *Auten* v. *Bank*, 174 U. S. 147; *Briggs* v. *Spaulding*, 141 U. S. 141; *McClure* v. *People*, 27 Colorado, 371; *Hall* v. *Henderson*, 126 Alabama, 495.

Section 5239, Rev. Stat. U. S., neither abrogates nor modifies the common law action of deceit.

Sutherland on Stat. Const., § 399, 1st ed., or § 572, 2d ed. Sedgwick on Construction of Stat. and Constl. Law, 323.

Where the statute creates the right and the remedy, the statutory remedy must be followed, but, where the right existed at common law and an additional statutory remedy is given, the latter is regarded as cumulative. *People* v. *Craycroft*, 2 California, 243.

---

[1] See p. 181, *post.*

Remedies are cumulative where the statute gives a remedy with a penalty; a previous common law remedy existing. *Dygert* v. *Schenck*, 23 Wend. 445; *Swarthout* v. *N. J. Steamboat Co.*, 48 N. Y. 209.

Where the legislature fails to provide a remedy for an injury occasioned by public use, the injured party will be remitted to his common law remedy. *Hooker* v. *New Haven, &c. Co.*, 14 Connecticut, 146.

Where a statute gives a right and provides no remedy, the party may pursue any remedy of the common law adapted to the nature of the wrong or injury. *Maple* v. *John*, 42 W. Va. 30.

Although the petitions should state matters which would constitute a cause of action under the national banking act (which we deny) they clearly state a common law action of deceit, which, being supported by the evidence, is sufficient to sustain the judgments.

Assuming that the petitions do contain a cause of action for negligence, they then contain two causes of action, of one of which the state court has exclusive jurisdiction; the other raises a Federal question. If defendants desired to have these causes separately stated and numbered they should have filed a motion to that effect, and having failed to do so they will be deemed to have waived it. *Exeter National Bank* v. *Orchard*, 43 Nebraska, 581.

If a petition states facts sufficient to constitute an action for deceit, and is therein sustained by the evidence, the judgment will be sustained, although the petition also contains a Federal question. *Hammond et al.* v. *Johnston et al.*, 142 U. S. 73; *Nav. Co.* v. *Raybold*, 142 U. S. 636; *Cook County* v. *Calumet, &c. Co.*, 138 U. S. 157; *De Saussure* v. *Gaillard*, 127 U. S. 216; *Johnson* v. *Risk*, 137 U. S. 300.

MR. JUSTICE WHITE delivered the opinion of the court.

This writ of error is prosecuted to secure the reversal of a judgment of the Supreme Court of the State of Nebraska

affirming one entered by a court of Seward County, in that State, upon a verdict of a jury awarding damages against the defendants below, plaintiffs in error here, because of certain acts charged to have been done by them as officers and directors of the Capital National Bank of Lincoln, Nebraska.

We briefly summarize a statement contained in the opinion of the court below concerning a prior action between the same parties. That action, and three others of like character, brought by different plaintiffs, were begun in a county different from that in which the present one was commenced, and recovery was sought, with one exception, from those who were defendants below in this case, of the sum of a loss occasioned by the insolvency and suspension of the Capital National Bank, a corporation organized under the national bank act. The actions referred to were removed into a Circuit Court of the United States, and in each a motion to remand was overruled, and in one of the cases (brought by Thomas Bailey) the Circuit Court sustained a demurrer to the petition and dismissed the cause, and the judgment so doing was affirmed by the Circuit Court of Appeals. 63 Fed. Rep. 488. The plaintiffs in the other cases thereupon dismissed their actions and commenced new ones, as also did Bailey, in Seward County, of which the case before us is one. The same persons, who were impleaded in the prior actions, were made defendants, and in two of the actions one Thompson, a director of the bank, who had not been previously sued, was joined as a defendant. The defendants were sought to be made liable for acts done as officers and directors of the Capital National Bank, although it was not expressly alleged that the bank was organized under the national bank act. Reliance in each action was placed upon alleged untrue written and oral statements and representations of the financial condition of the bank alleged to have been made and published by the defendants, which were fully set out in various forms of expression, but in none of the averments was it specifically asserted that the acts in question were done in consequence of and in com-

pliance with the provisions of the national bank act, although
the exhibits attached to the petition disclosed the character
of the written reports, which were in part relied upon. The
state court overruled an application to remove, and a transcript
of the record having been filed in the Circuit Court, on motion
the action was, by that court, remanded to. the state court,
upon the ground.that the petition was "clearly based, not upon
the provisions of the national banking act, but upon the lia-
bility claimed to arise under the principles of the common law."
See *Bailey* v. *Mosher,* 74 Fed. Rep. 15.

An amended petition was filed, changing somewhat the
averments originally made, and supplementing the same by
new allegations. After a considerable lapse of time a second
amended petition was filed. This latter enumerated many
acts of negligence and mismanagement in the conduct of the
affairs of the failed bank charged to have caused its insolvency,
in addition to the averments which had been made in the
original petition. The defendants demurred on the ground
of want of jurisdiction, because the result of the pleading as
amended was to demonstrate that the whole cause of action
relied upon was based upon the violation by the defendants
of provisions of the national bank act, and because under
that act no cause of action in favor of the plaintiff was stated.
The day the demurrer was filed the action was removed by
the defendants into the Circuit Court of the United States.
That court overruled a motion to remand, (see *Bailey* v. *Mosher,*
95 Fed. Rep. 223,) and subsequently the court sustained the
demurrer and dismissed the action. Reviewing the action
of the Circuit Court, however, the Circuit Court of Appeals
held that in any event the removal had been made too late,
"and that the judgment of the lower court dismissing the
plaintiff's case was rendered without lawful jurisdiction over
the case." 107 Fed. Rep. 561. As a result the case went
back to the state court, and in that court the demurrer to the
second amended petition was argued and overruled.

There was judgment against Stuart, one of the defendants,

for failure to answer the original petition, and this judgment was affirmed by the Supreme Court of Nebraska. *Stuart* v. *Bank of Staplehurst*, 57 Nebraska, 570. A separate answer to the second amended petition was filed on behalf of the defendant Thompson and a joint answer on behalf of the defendants Yates and Hamer. In the answer of Thompson it was averred that while a stockholder he was not a director of the Capital National Bank at the time the plaintiff made its various deposits; it was denied that any of the reports set out and referred to in the petition were signed or attested by Thompson, and specifically for himself he denied "all alleged misconduct and mismanagement of said bank on his part, and all of the alleged neglect of duty and the causing of the insolvency of said bank as charged in the said amended petition."

The following paragraph was also set up in the answer:

"This defendant further says that the cause of action set out in the plaintiff's amended petition, if it have any, is founded upon alleged facts, which, if true, constitute a violation by this defendant as a director or stockholder, of his duties as such director or stockholder as laid down and defined in the national banking laws of the United States above referred to, concerning the government and management of national banks. And this defendant alleges that if any liability attaches to him as a director or stockholder of said bank for any act done or duty neglected as set forth in said amended petition or otherwise, that such liability is determined and controlled by the national banking act concerning the management of national banks; and that in determining the liability of this defendant there is necessarily involved the construction of said national banking act relating to the duties of directors and stockholders of national banks. That a Federal question is involved in determining the liability of this defendant by reason of the alleged mismanagement of said bank and the alleged neglect of duty on the part of this defendant."

Matter alleged to constitute an estoppel against the further prosecution of the action and to operate as a bar to recovery

was set up in special defenses, which need not, however, be further noticed.

The answers of Yates and Hamer were similar in effect to that of Thompson, except as to the allegation that Thompson was not a director when the plaintiff made his deposits.

The cause was put at issue. Before the trial three of the defendants—Walsh, Hamer and Phillips—died, and the action was revived against the administrators of Walsh and Hamer, but was not prosecuted further against the estate of Phillips. The companion actions brought by different plaintiffs were tried with the case at bar by a jury, and there was verdict against all the defendants then before the court, upon which judgment was entered except as to the administrator of Walsh, in whose favor judgment was entered by the court upon special findings as to him made by the jury. After the correction of an error in the amount of the judgment the case was taken to the Supreme Court of Nebraska, where the judgment was affirmed. 105 N. W. Rep. 287. This writ of error was then sued out apparently on behalf of all the defendants. We assume, however, that Charles W. Mosher and R. C. Outcalt, two of the defendants below, have abandoned the prosecution of the writ. We so assume because no cost bond appears to have been furnished by either; because neither have appeared at the bar by counsel and no brief in their behalf has been filed, and on the contrary—in the brief of the defendants in error it is stated that the persons named did not prosecute error, which we take to mean that the parties referred to have abandoned in this court the prosecution of the writ of error which was sued out in their names, and because the bill of exceptions does not contain the answers of those defendants nor the evidence relating to their case, which would be pertinent to consider if we were called upon to determine whether prejudicial error was committed as to them. None of the remaining plaintiffs in error were officers of the bank and they were sued simply for acts done as directors thereof.

A motion to dismiss first requires attention. The asserted want of jurisdiction in this court is based upon the contention that no Federal question was raised in or decided by the state court. But, as·will hereafter appear, the record plainly shows that both in the trial· and appellate courts an immunity was claimed under section 5239 of the Revised Statutes, at least in respect to· the rule of liability applied below, and such immunity was expressly. denied by the state court, and there is, therefore, jurisdiction, even if in other respects jurisdiction might not be exercised, as to which we are not called upon to decide. *Schlemmer* v. *Buffalo, R. & P. R. Co.,* 205 U. S. 1; *Tullock* v. *Mulvane,* 184 U. S. 497; *Metropolitan National Bank* v. *Claggett,* 141 U. S. 520; *Logan County National Bank* v. *Townsend,* 139 U. S. 67.

To dispose of the controversy presented by the record before us we need only consider the following assignments of error:

."7. The court has erred in deciding that·the fact that those plaintiffs in error who were directors were without knowledge of any falsity of the reports attested by them or some of them, mentioned in the petition, was immaterial, and that such directors or any or them were liable under the ·proofs showing they were without knowledge of the falsity of such reports; the said decision is in violation of the provisions of section 5239 of the Revised Statutes of the United States, which makes liability of ·the directors dependent upon the fact that they knowingly violated or knowingly permitted the violation of the provisions of. the national banking· act, and participated in or assented to such violation.

"8. The court has· erred in deciding that a common law action of deceit based upon reports of the Capital National Bank made to the Comptroller of the Currency and attested · by the directors of such bank can be maintained against such directors, without knowledge of any false statements in such reports, and without any participation in or assent to any violation of the national banking act as essential elements ·

of the cause of action as required by section 5239 of the Revised Statutes of the United States."

The basis for these assignments is found, not only in instructions given by the trial court, but in refusals to give instructions asked by the defendants. The instructions given, which are pertinent to the assignments and which were duly excepted to below, read as follows:

"Bank officers and directors who make or participate in a published report of the financial condition of the banks of which they are such officers and directors may become liable for damages sustained by one depositing money in such bank in reliance upon the false representation of the condition of the bank contained in the report, even though such director or officer did not know that his report so published was in fact false or untrue.

"The director of a bank who publishes or participates in the publication of a report of its condition by such act asserts that the statements contained in such report are substantially true, and he cannot rely upon his ignorance of the true condition of the bank as a defense to an action when he in such published reports represents the bank to be solvent, if in truth it is not solvent and its assets are fictitious or worthless or its liabilities so much greater than its assets as to render the bank insolvent.

"A director or executive of a national bank is responsible for the making and publication of a false report of its financial condition, though he did not personally make and publish such statement, if he in any manner participated in the making or publication thereof. A director of a national bank is presumed to know its true condition and that the law requires a true statement of its affairs to be made and published by the bank from time to time, and if one has been a director or executive officer of such a bank for a long period of time he is presumed to have knowledge of the making and publishing of the statements of its condition, and the burden is cast upon him to overcome this presumption by competent evidence.

"The jury are instructed that inasmuch as the law required that all reports made by a national bank to the Comptroller of the Currency shall be published at the expense of the bank, in a newspaper at the place where the bank is established, you have a right to consider such published reports as have been introduced in evidence in this action purporting to have been signed and whose names appear in such published reports as having been authorized by such defendants so appearing to have signed the same."

Of the instructions refused, to which exception was taken, we need only quote the following:

"The jury are instructed that if you find from the evidence introduced in reference to any one of the directors named in any one of the said cases that such director did not knowingly violate any of the requirements of the national banking act under which he was acting as such director, but acted in good faith, trusting and confiding in the officers, agents of the bank, having no reason to suspect the integrity and honesty of any one of such officers and agents, then you are instructed that your verdict should be in favor of such defendant."

Concerning the cause of action and the proof required to justify a recovery, the Supreme Court of Nebraska said:

"The petitions show misfeasance and mismanagement on the part of the defendants, as officers of the bank, and that the bank thereby sustained damages, but they show more than that. They show that the defendants made and published false and misleading statements concerning the financial condition of the bank, whereby the plaintiffs were induced to become and remain its creditors to their damage. In short, whatever other allegation may be contained in the petitions, they also contain sufficient to constitute a common law action for deceit. That the party, upon whom the deceit or imposition was practiced by the officers of a national bank, may maintain an action against them in his own name and behalf for damages resulting to him therefrom, and that his right of

action does not rest on the Federal statutes but the common law, is no longer an open question.

\*     \*     \*     \*     \*     \*     \*     \*

"It was incumbent on the plaintiffs to establish by a preponderance of the evidence, (1) That the defendants published the statements purporting to show the financial condition of the Capital National Bank or participated in the publication thereof; (2) That such statements were false; (3) That the plaintiffs severally relied upon such statements and believed them to be true, and were thereby misled to their injury. As to the first proposition, the evidence shows that none of the statements were actually made by all of the defendants, but that each defendant participated in making some of them. It is urged on behalf of the defendant Thompson that he participated in making but one of them. That is a mistake; the evidence is conclusive that he signed and participated, in making at least four of them, the first being that made and published December 28, 1886, the last that made and published July 9, 1891. The mistake arises, perhaps, from the construction which the defendants seem to place on the petitions. The petitions set out two of the statements at length, but it is also alleged that at divers other times and dates, between the 28th day of December, 1886, and the 21st day of January, 1893, the defendants made and published other false and misleading reports purporting to show the condition of the bank which were relied upon by the plaintiff. The defendants appear to take the position that the plaintiffs should be restricted to the two reports set out at length. We do not think so. The allegations of the petitions are sufficiently broad to admit proof of any and all statements made on and between the dates just mentioned. If definiteness and certainty required all such statements to be set out at length, the remedy was by motion."

It is not to be doubted that, although the plaintiff alleged the making of false verbal and written statements, there was no attempt to establish any verbal misrepresentations. It is

also certain, even if it be conceded, *arguendo*, that there was some evidence tending to show the making of alleged written representations other than those contained in the official reports made by the association to the Comptroller of the Currency, and published in conformity to the national bank act, that such latter statements were counted upon in the amended petition and were, if not exclusively, certainly principally, the grounds of the alleged false representations covered by the proof. Under this state of the record, irrespective of the nature and extent of the proof required to maintain an action of deceit at common law, the question is: Did the Supreme Court of Nebraska rightfully decide that the plaintiff was entitled to recover against the defendant directors upon proof merely of the following facts: "(1) That the defendants published the statements purporting to show the financial condition of the Capital National Bank or participated in the publication thereof; (2) That such statements were false; (3) That the plaintiffs severally relied upon such statements and believed them to be true, and were thereby misled to their injury"? And the exact import of the propositions which were thus stated by the court below and were made the test of the right of the plaintiff to recover is plainly shown by an opinion of the Nebraska court cited in its opinion in this case, viz., *Gerner* v. *Mosher*, 58 Nebraska, 135, which involved the liability of the directors of the very same national bank with whose failure this record is concerned. The court said:

"The defendants in the present suit, who, as directors, attested the reports made by the Capital National Bank to the Comptroller of the Currency, by such act vouched for, or certified to, the absolute truthfulness of the statements therein contained, and not that the report was correct, so far as the directors knew or had been advised by the proper performance of their duties as directors. The means of information, this record shows, were accessible to them. It was their duty to know whether the reports were correct or not.

\*    .    \*    \*    \*    \*    \*    \*    \*

"In our view, whether the attesting directors possessed knowledge of the falsity of their reports is wholly immaterial. They were in fact false and untrue, and those who deposited money with the bank, or who purchased stock of the corporation, in reliance upon the truthfulness of the contents of those reports, were as much deceived and damaged thereby as though the directors when they signed the reports knew them to be false. That they were innocent of the true situation or condition of the affairs of the bank is wholly an unimportant consideration, since proof of a scienter is not necessary to a recovery. This court has frequently asserted that, to maintain an action for false representation, it is not essential that it be shown that they were intentionally or knowingly made by the defendant. This is the rule in ordinary causes, and no valid reason can be suggested or pointed out why the same principle should not apply in actions for deceit against the directors of a banking corporation. Certainly no case has come under our observation which has made an exception in their favor."

The proper solution of the question above propounded necessitates a consideration of the legislation of Congress respecting national banks.

By section 24 of the national bank act of February 25, 1863, ch. 58, 12 Stat. 665, 671, each association was required to make and forward to the Comptroller of the Currency quarterly reports, "containing a true statement of the condition of the association making such report," in respect to enumerated items, and it was provided that such report "shall be verified by the oath or affirmation of the president and cashier, and all willful false swearing in respect to such report shall be perjury, and subject to the punishment prescribed by law for such offense." It was made the duty of the Comptroller to publish full abstracts of such reports, as to specified items, in newspapers printed in the cities of Washington and New York, "and a separate report of each association" was required to be published, at the expense of the association, in a newspaper

published in the place where such association was established. Associations located in a number of the leading cities were also required to publish, in a newspaper published where the association was located, a statement, under the oath of the president or cashier, of the condition of the association, showing the average amount of loans and discounts, specie, deposits, and circulation. By section 45 the cashier of each association was required after each dividend to make, under oath, "a full, clear, and accurate statement of the condition of the association," enumerating specified particulars, which statement was to be forthwith transmitted to the Comptroller of the Currency. The national bank act of June 3, 1864, ch. 106, 13 Stat. 109, substantially reënacted, in a much condensed form, the requirements as to quarterly reports of the financial condition of each association. The abstract of such reports was required, however, to be published by the Comptroller only in the city of Washington, and *every* association was required to make a monthly statement of its condition under the oath of the president or cashier. For each day after five days' delay in making a report each bank was made liable to a penalty of one hundred dollars. The act of 1864 did not contain a requirement for the making and transmittal to the Comptroller of a statement following the declaration of a dividend.

By an act approved March 3, 1869, ch. 130, 15 Stat. 326, in lieu of the reports required by the national bank act of 1864, it was made the duty of each association, on the requisition of the Comptroller, to make not less than five reports in each year. These reports were not only required to be verified "by the oath or affirmation of the president or cashier of such association," but to be "attested by the signature of at least three of the directors." Publication of such reports was required to be made in a newspaper published in the place where the association was established, and a penalty of one hundred dollars for each day's delay after a specified time in making and transmitting the report was authorized to be retained by the Treasurer of the United States out of interest due the associa-

tion. Each association was also required to make a report, attested by the oath of its president or cashier, within ten days after the declaration of a dividend, stating the amount of each dividend and the amount of net earnings in excess of such dividends.

As embodied in the Revised Statutes the provision became section 5211, and is copied in the margin.[1]

By section 39 of the act of 1863, as well as by section 9 of the act of. 1864, a director of a national bank was required, *inter alia,* as he is now required by section 5147, Rev. Stat., to "take an oath that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of such association, and will not knowingly violate, or willingly permit to be violated, any of the provisions of this Title." In the acts of 1863 and 1864 the concluding word used was not "Title," but "act."

Sections 50 and 52 of the act of 1863, 12 Stat. 679, 680, were practically identical, and sections 53 and 55 of the act of 1864, 13 Stat. 116, were also substantially alike, and by those sections civil and criminal liabilities were authorized to be assessed against and imposed upon directors of banking associations in certain contingencies. Section 52 of the act of 1863

---

[1] SEC. 5211. Every association shall make to the Comptroller of the Currency not less than five reports during each year, according to the form which may be prescribed by him, verified by the oath or affirmation of the president or cashier of such association and attested by the signature of at least three of the directors. Each such report shall exhibit, in detail and under appropriate heads, the resources and liabilities of the association at the close of business on any past day by him specified; and shall be transmitted to the Comptroller within five days after the receipt of a request or requisition therefor from him and in the same form in which it is made to the Comptroller, shall be published in a newspaper published in the place where such association is established, or if there is no newspaper in the place, then in the one published nearest thereto in the same county, at the expense of the association; and such proof of publication shall be furnished as may be required by the Comptroller. The Comptroller shall also have power to call for special reports from any particular association whenever in his judgment the same are necessary in order to a full and complete knowledge of its condition.

and section 55 of the act of 1864—as supplemented by the act of April 6, 1869, ch. 11, 16 Stat. 7, construed in the act of July 8, 1880, ch. 126, 16 Stat. 195, making it an offense to aid or abet an officer or agent of any association in doing the acts prohibited in section 55 of the act of 1864, with intent to defraud or deceive—became section 5209 of the Revised Statute. It is copied in the margin.[1]

Section 50 of the act of 1863 and section 53 of the act of 1864 became section 5239 of the Revised Statutes, reading as follows:

"SEC. 5239. If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this title, all the rights, privileges, and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper circuit, district, or territorial court of the United States, in a suit brought for that purpose by the Comptroller of the Currency, in his own name, before the association shall be declared dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

---

[1] SEC. 5209. Every president, director, cashier, teller, clerk or agent of any association, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association, or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten.

As in the early acts relating to the national banks, so in the sections of the Revised Statutes on the same subject there are many provisions specifically enjoining the doing or not doing of certain acts by the association or its officers. Thus by section 5137, Rev. Stat. (formerly section 28 of the act of 1864), a national bank is prohibited from acquiring real estate for purposes other than those specified in the act, and is forbidden to hold real estate, under certain contingencies, more than a specified length of time; by section 5200, Rev. Stat. (formerly section 29 of the act of 1864), it is prohibited to loan to any person or corporation in excess of one-tenth of the capital stock of a bank; by section 5201, Rev. Stat. (formerly section 35 of the act of 1864), banking associations are forbidden to loan or purchase their own stock; by section 5202, Rev. Stat. (formerly section 36 of the act of 1864), associations are forbidden to become indebted or become in any way liable exceeding the amount of their capital stock except on account of specified demands; by section 5203, Rev. Stat. (formerly section 37 of the act of 1864), a restriction is imposed upon the use of circulating notes; by section 5204, Rev. Stat. (formerly section 38 of the act of 1864), the withdrawal of the capital of an association while continuing its operations is forbidden either in the form of dividends or otherwise; and section 5206, Rev. Stat. (formerly section 39 of the act of 1864), embodies a restriction upon the use of notes of other banks. In addition to these sections of course may be considered the various sections enjoining the making and publishing of periodical reports of the association, to which we have heretofore referred.

It thus becomes obvious that the national bank act imposes upon directors duties which would not rest upon them at common law, and that among such duties is the furnishing to the Comptroller of the Currency reports concerning the condition of the bank and the publication thereof. Although the statutory provisions subsequent to the act of 1863, relating to the making and publishing of such reports, do not, as did

the act of 1863, expressly require that the report when made should contain a "true" statement of the condition of the association, yet, by necessary implication, such is the character of the statement required to be made, and by the like implication the making and publishing of a false report is prohibited.

Considering the text of the national bank act, as now embodied in the Revised Statutes, including section 5239, we think the latter section affords the exclusive rule by which to measure the right to recover damages from directors based upon a loss alleged to have resulted solely from the violation by such directors of a duty expressly imposed upon them by a provision of the act. By the first sentence of the section mentioned a forfeiture of the charter is entailed "if the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this title. . . ." And the last sentence ordains the rule by which civil liability is to be determined, by providing that "every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation." As the section thus comprehends all the express commands to do or not to do, as to directors, contained in the national bank act, and besides specifies the nature of the conduct of directors from which their civil liability for violation of such commands may arise, it results that liability cannot be entailed upon them by exacting a different and higher standard of conduct as regards such commands than that established by the statute without depriving directors of an immunity conferred upon them. That the words "shall knowingly violate, or knowingly permit," etc., found in the first sentence of section 5239, Rev. Stat., were intended to express the rule of conduct which the statute established as a prerequisite to the liability of directors for a violation of the express provisions

of the Title relating to national banks, is additionally shown by the oath which a director is required to take, wherein, as already stated, he swears " that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of such association, and will not knowingly violate, or willingly permit to be violated, any of the provisions of this Title." Mark the contrast between the general common law duty to "diligently and honestly administer the affairs of the association," and the distinct emphasis embodied in the promise not to "knowingly violate, or willingly permit to be violated, any of the provisions of this Title." In other words, as the statute does not relieve the directors from the common law duty to be honest and diligent, the oath exacted responds to such requirements. But as, on the other hand, the statute imposes certain express duties and makes a knowing violation of such commands the test of civil liability, the oath in this regard also conforms to the requirements of the statute by the promise not to "knowingly violate, or willingly permit to be violated, any of the provisions of this Title."

And general consideration as to the spirit and intent of the national bank act (*Easton* v. *Iowa,* 188 U. S. 220; *Davis* v. *Elmira Savings Bank,* 161 U. S. 275) also render necessary the conclusion that the measure of responsibility, concerning the violation by directors of express commands of the national bank act, is in the nature of things exclusively governed by the specific provisions on the subject contained in that act. Thus, a contrary conclusion would lead to a varying measure of responsibility, in the several States in which the question of liability might arise, depending upon the conceptions of the state courts of last resort as to the meaning of the act of Congress imposing the duty. Hence, it would follow that the same provision of the statute might mean one thing in one State and a different thing in another. The confusion which would result is aptly illustrated by a review made by the Supreme Court of Ohio in the recent case of *Mason* v. *Moore,* 73 Ohio St. 275, of the conflicting state adjudications as to the

proper rule to be applied to fix the liability of bank directors to third persons in an action of deceit at common law. The frustration of the public policy embodied in the national bank system, by the crippling of the usefulness of such institutions, which would result from holding that directors in performing the duties imposed upon them by the national bank act might be held liable civilly, not by the standard of conduct which the act provides for a violation of its express commands, but by another and different one is apparent. Under such a conception it might well be that prudent and responsible persons would decline to assume the discharge of the duties imposed by the statute because of the hazard of an uncertain pecuniary liability which the statute imposing the duty did not contemplate.

The civil liability of national bank directors, then, in respect to the making and publishing of the official reports of the condition of the bank, a duty solely enjoined by the statute, being governed by the national bank act, it is self-evident that the rule expressed by the statute is exclusive, because of the elementary principle that where a statute creates a duty and prescribes a penalty for non-performance the rule prescribed in the statute is the exclusive test of liability. *Farmers' & M. Nat. Bank* v. *Dearing*, 91 U. S. 29, 35, and cases cited. The error in the decision below becomes at once apparent when its correctness is tested by the rule that the statute is applicable and prescribes the exclusive test of liability. The doctrine, as we have seen, upon which the court below rested its judgment was that directors of a national bank who merely negligently participated in or assented to the making and publishing of an untrue official report of the condition of the bank were civilly liable to anyone deceived to his injury by such report. Indeed, in one aspect, the ruling below went further than this, since it was, in substance, decided that despite the exercise of diligence by the director, if he attested an untrue report he was civilly liable because he did so at his risk, since it was his duty to know or to refrain from acting. That this imposed a

higher standard of conduct than was required by the statute is obvious, but is clearly also established by previous decisions of this court, pointing out that where by law a responsibility is made to arise from the violation of a statute knowingly, proof of something more than negligence is required, that is, that the violation must in effect be intentional. *McDonald* v. *Williams*, 174 U. S. 397; *Potter* v. *United States*, 155 U. S. 438, 446, and cases cited. See, also, *Utley* v. *Hill*, 155 Missouri, 232, 264 *et seq.* and cases cited.

Of course in what has been said we have confined ourselves to the precise question arising for decision, and therefore must not be understood as expressing an opinion as to whether and to what extent directors of national banks may be civilly liable by the principles of the common law for purely voluntary statements made to individuals or the public, embodying false representations as to the financial condition of the bank, by which one who has rightfully relied upon such representation has been damaged. And because we have applied in this case to the duty expressly imposed by the statute the standard of conduct established therein we must not be considered as expressing an opinion upon the correctness of the views enunciated by the court below concerning the standard which should be applied solely under the principles of the common law, to fix the civil liabilities of directors in an action of deceit. See *Briggs* v. *Spaulding*, 141 U. S. 132.

There is a suggestion that the subject matter of this controversy is so inherently Federal that, although the judgments of the Circuit Court and of the Circuit Court of Appeals remanding the cause to the state court may not be reëxamined (25 Stat. 435), nevertheless it should now be decided that the state court was wholly devoid of jurisdiction. This claim is predicated upon the provision of section 5239, Rev. Stat., conferring exclusive jurisdiction on courts of the United States to declare a forfeiture of the charter of a national bank as the result of wrongs committed by the directors, and the contention that a declaration of such forfeiture is a prerequisite to

an action to enforce the civil liability of directors, and that such action could only be brought in the courts of the United States after a forfeiture has been adjudged. We content ourselves with saying that we think these contentions are without merit.

It follows from what has been said that, as to Mosher and Outcalt, two of the persons named as plaintiffs in error in the writ and citation, the writ of error is dismissed for want of prosecution; as to the other plaintiffs in error, the judgment below is reversed and the case is remanded for further proceedings not inconsistent with this opinion.