FIRST NAT. BANK OF FAIRBANKS v. NOYES.

(Circuit Court of Appeals, Ninth Circuit. May 12, 1919.)

No. 3142.

1. ESTOPPEL ☞88(2)—EQUITABLE ESTOPPEL—WHAT CONSTITUTES.

That a director of a national bank signed his name to reports to the Comptroller of the Currency, representing branches maintained by the bank to be separate institutions, held, as the bank knew all the facts in relation thereto, and did not act to its detriment in reliance on the reports, not to estop the director from asserting, in a suit by the bank to recover against him because of excessive loans to a branch, that such branches were part of the bank itself.

2. BANKS AND BANKING ☞253—BRANCH BANKS—WHAT ARE.

In an action by a national bank against a former director to recover on account of excessive loans to alleged separate institutions, etc., held, that such institutions were branches maintained by the bank to purchase gold dust, so statements to the Comptroller showing the condition of accounts between the bank and branches were not notice to the director of loans to the branches, or of loans made to borrowers under authority of the bank.

3. BANKS AND BANKING ☞253—DIRECTORS—LIABILITY.

A director of a national bank, who was not familiar with banking business, held not negligent because he did not examine into advances made by the bank to branches which it maintained, and no recovery can be had on ground of excessive loans by the branches, where the president and majority stockholder of the bank represented all sums sent to the branches were for purchase of gold dust.

4. BANKS AND BANKING ☞253—DIRECTORS—LIABILITY—DIVIDENDS.

In an action by a national bank against a former director to recover, on the theory that a dividend had improperly been declared, held, that the declaration of the dividend, which was at the suggestion of the Comptroller of the Currency to wind up branches of the bank, was not improper, and no liability could be predicated thereon, as practically the whole of the dividend was immediately transferred to the bank by the stockholders.

5. BANKS AND BANKING ☞253—DIRECTORS—LIABILITY.

Where a national bank seeks to recover against a director for a loss resulting from the director's violation of a duty imposed by the National Banking Act, proof of something more than negligence is required, and there must be proof that the violation was in effect intentional.

6. BANKS AND BANKING ☞253—DIRECTORS—LIABILITY.

Directors of a national bank owe a common-law duty to exercise ordinary care and prudence in the administration of the affairs of the bank, and they should not be shielded from liability for want of knowledge of wrongdoing, if that ignorance is the result of gross inattention; but they cannot be held responsible for the wrongful act of other directors, nor to intimately know to whom credits are given.

7. BANKS AND BANKING ☞254—DIRECTORS—LIABILITY.

In an action by a national bank against a director to recover for various losses, including improper extension of credits, claimed to have resulted from the director's neglect, evidence held insufficient to show that the director was liable, either at common law or under the National Banking Act.

Appeal from the District Court of the United States for the Fourth Division of the Territory of Alaska; Charles E. Bunnell, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

257 F.—38

Suit by the First National Bank of Fairbanks against F. G. Noyes. From a decree for defendant, complainant appeals. Affirmed.

The appellant, a national banking association of Fairbanks, Alaska, brought suit against the appellee, who had been one of the directors of the bank during the period between September 9, 1907, and March 5, 1909, on five causes of action, the first of which was to recover the sum of $25,722.27 as damages sustained by the appellant on account of an excessive loan made in violation of the provisions of the National Banking Act by the directors of the bank to what was then known as the "S. A. Bonnifield Bank." The second was to recover from the appellee $5,627.93 damages sustained by the appellant by the act of the appellee and other directors in declaring a dividend in violation of the provisions of said act, and thereby appropriating the same to their own use. The third was to recover the sum of $7,168.22 as damages on account of an excessive loan, made in violation of the provisions of the act, to what was known as the "Bank of Cleary." The fourth and fifth were to recover the sums of $5,100 and $7,800 damages sustained on account of excessive loans made in violation of the provisions of the act to John W. Corson and Theo. Witte, respectively. The appellee in his answer denied any violation on his part of any of the provisions of the act respecting excessive loans or illegal dividends, and alleged that the S. A. Bonnifield Bank and the Bank of Cleary were not separate and distinct banks, but were only branches of the appellant, belonging to and a part of it.

On the pleadings and the evidence the court made substantially the following findings of fact:

That the capital stock of the bank is $50,000, consisting of 500 shares, of which the appellee, during the period while he was a director, owned 10 shares, and that at that time Samuel A. Bonnifield, the president, and F. G. Manley, a director, owned practically all of the stock of the corporation. That from April 29, 1907, to October 15, 1909, the said Bonnifield maintained and carried on a banking business on Dome Creek, Alaska, under the name of the S. A. Bonnifield Bank, and from April 5, 1906, until February 13, 1909, he maintained and carried on, on Cleary Creek, Alaska, another banking business under the name of the Bank of Cleary. That these banking institutions were separate institutions from the First National Bank, and were established before the appellee became a director. That the appellee was not a banker, and he believed that the Bank of Cleary and S. A. Bonnifield Bank were part of the First National Bank, and was not guilty of negligence, or of any culpable intent, in believing that these so-called banks were not borrowers of the funds of the appellant, but held those funds subject to the control and disposal of the appellant, as if said funds had been held at the place of business of the appellant. That loans were made to Manley in excess of the amount permitted by law, to the knowledge of said Bonnifield and Manley, but without the knowledge, consent, or acquiescence of the appellee, and no loss resulted to the appellant from said loans.

That the so-called S. A. Bonnifield Bank and the so-called Bank of Cleary were established by Bonnifield for the purpose mainly of purchasing and collecting gold dust from the miners in the vicinity thereof, and for the use and benefit solely of the appellant, and Bonnifield thereafter caused to be transferred and kept on the books of the Dome Creek and Cleary offices doubtful debts and excessive loans of the appellant, and drew checks upon his account in those offices without having any funds to his credit, all of which was done without the knowledge, participation, or assent of the appellant, who believed that those two offices were used only for purchasing and collecting gold dust, and for the accommodation of the miners. That in the latter part of August, 1908, the appellee learned that these offices were irregular, and not permitted by law, and thereafter he and Hurley, the cashier, did all in their power to close said offices, until they were finally closed. That the loan register of the appellant shows no entry of loans or discounts for those offices, nor does the interest account of the appellant show that any interest was ever charged to those offices for moneys sent thereto. That the accounts between said offices and the appellant were open accounts, changed from day to day, by reason of entries of credits and debits

caused by accounts transferred, and cash sent by the appellant to those institutions, and gold dust sent back therefrom to the appellant, and the same accounts retransferred from said offices to the appellant, and by the cashing of checks by the three offices, one for the other.

That the credit given by the appellant on its books to the so-called Bonnifield Bank on August 18, 1908, for $39,563.12, being the amount of the Tanana Commercial Company account, was given without the knowledge, participation, or assent of the appellee, and was given by Hurley, the cashier of appellant, for the purpose of winding up and closing the affairs of the Bonnifield Bank, in consequence of directions received from the Comptroller of the Currency. That said account belonged to and was the property of the appellant, and the purpose of the cashier in making said credit entries was to show on the books the true condition of the appellant and its accounts. That of the loans and advances made by the appellant to the Tanana Commercial Company, $14,500 was advanced by Bonnifield prior to the time when the appellee became a director, $632.91 was usurious interest, $5,158.61 was for an overdraft permitted to the Tanana Commercial Company without the knowledge, participation, or assent of the appellee, and $19,271.60 was the balance of a loan made between September 27 and December 2, 1907, to the Tanana Commercial Company by Bonnifield, as president of the appellant, and in pursuance of an agreement between him and the Commercial Company prior to the time when the appellee became a director, and was made on the security of certain goods and chattels, but without the knowledge or assent or participation of the appellee.

That the appellee did not on August 18, 1908, or at any time, knowingly or at all cause to be made, or participate or assent to the making of, any credit upon the books of the appellant from the Bonnifield Bank of the sum of $39,563.12, or any sum, nor did he assent to the making of any' charge by the Bonnifield Bank against the appellant of said sum, nor did he at any time have any knowledge of the value of the goods or stock of merchandise or book accounts of the Tanana Commercial Company. That the moneys drawn out of the funds of the appellant and of the so-called Bonnifield and Cleary Banks by Bonnifield, during the time that he was president and manager, were the moneys and property of the appellant, and the securities taken by him in his own name through either of said banks were the securities and property of the appellant, and the assets of the so-called Bonnifield and Cleary offices were the accounts and securities of the appellant. That in 1907, Bonnifield drew from the funds of the Bonnifield Bank, May 1, $20,000, June 3, $6,056, June 7, $14,000, and credits were made to his account, so that the Bonnifield Bank showed a balance debit of $20,595.15 on its books. That between the dates of Bonnifield's overdraft and the closing up of the Bonnifield Bank, profits had been made by the latter and remitted to the appellant, resulting in a debit balance of only $6,103.01. That the Bonnifield and Cleary Banks had no source of income, and the general expenses of operating the same were borne by the appellant in funds furnished by it. That no loss has been caused to the appellant in consequence of establishing and maintaining either the Bonnifield or the Cleary Bank, or in consequence of money sent to said banks. That said banks have purchased large amounts of gold dust for the benefit of the appellant, and delivered the same at cost purchase price, so that the appellant has realized out of the gold dust so purchased by said banks more than sufficient to equal the amount of the balances claimed in the complaint to have been lost by reason of the operations in the Bonnifield and Cleary Banks.

That upon February 13, 1909, the directors of the appellee caused a dividend of $40,000 to be declared upon the shares of the capital stock of the appellant, and on the same day they credited the Bank of Cleary with $39,840 of the dividend so declared. That' at that time the capital stock, surplus, accrued interest, undivided profits, and other assets belonging to the appellant were in excess of $150,000, and the amount out of which a dividend could be declared lawfully was in excess of $40,000, and the appellee and the other directors did not know that there were bad debts amounting to $48,450, but believed that the net profits then on hand and available for

dividends, deducting losses and bad debts, was in excess of $40,000, and that the capital stock of the appellant was not impaired by declaring the dividend. That the declaration of that dividend was made solely for the purpose of closing up the affairs and office of the Bank of Cleary, in pursuance of directions from the Comptroller of the Currency, and upon declaring the same certificates of deposit were made to the order of the stockholders for their respective shares, which certificates were immediately indorsed by them and not cashed, but turned over to the appellant, save and except the dividend on 2 shares, amounting to $160; but the appellee contributed the entire amount of his dividend for the purpose indicated. That in declaring the dividend the appellee did not assent to or participate in any withdrawal of any portion of the appellant's capital, and that in fact by the dividend the capital of the appellant has not been impaired, nor has it sustained any damage.

That the loan to Carlson was made by the appellant upon his note for $5,700 of date October 29, 1906, of which $700 was usurious interest, and further usurious interest was added thereto, amounting to $583.68, and said note, with the usurious interest, was transferred a year later to the Bank of Cleary, where Carlson had also an overdrawn account. That on September 15, 1907, Carlson's account at Cleary was $26,760.57, which by October 29, 1907, was reduced to $22,690.01, and on that day it was further charged with the amount of the note, making the total $28,973.69, and on October 30, 1907, the total amount was transferred to the appellant, and $20,000 thereof was charged to the personal account of Bonnifield, and subsequently paid by him. That the unpaid balance of Carlson's account, amounting to $8,973.59, included $1,283.68 of usurious interest, to which further usurious interest amounting to $1,184.53 was added, making the sum total $10,158.22, for which he gave his note to Bonnifield, which was subsequently indorsed to the appellant. That $2,990 has been collected on account of the note, and after deducting that sum and usurious interest Carlson's account was shown by the evidence to have been decreased down to $4,700.01, which was less than Carlson owed to the appellant at the time when the appellee became a director. That no loss suffered by the appellant by reason of the transactions with Carlson was caused by the act or omission of the appellee, and the loans to Carlson were made by Bonnifield, and without the knowledge or participation of the appellee. That he never knew or consented to any of the credit entries or transactions between the Cleary Bank and the appellant in the matter of the Carlson account. That in fact the Carlson account was neither imaginary nor worthless, or fictitious or uncollectible.

That between July 17, 1908, and August 18, 1908, the cashier of the appellant, without the appellee's knowledge or consent, discounted bills drawn by J. W. Corson to the amount of $11,450, and bills of exchange drawn by one McDonald, amounting to $2,750. That Manley, then a director of the appellant, represented to the cashier that said bills of exchange were drawn in good faith against existing values. That the appellee never acquired knowledge of the said transactions until more than a month after they had been consummated. That the appellant has not been damaged by any act of the appellee in discounting and cashing said drafts. That between January 14, 1909, and March 5, 1909, the appellant loaned to Theodore Witte, without the knowledge or consent of the appellee, $10,500, and without his knowledge or consent permitted Witte to overdraw to the sum of $1,203.43. That on March 8, 1909, the overdraft was paid by Witte, and the appellant was not damaged in consequence of any participation or assent of the appellee to said loan or overdraft.

That the appellant, through its directors and officers, knew on September 5, 1907, and its stockholders knew on January 7, 1908, that the appellee was not a banker, and had no experience in the banking business, and was not able to understand any complicated system of bookkeeping, such as bank books, nor any of the transactions therein recorded, and they at no time informed him of the true condition of the appellant or of its affairs with the Cleary and Bonnifield Banks, and that the appellee was not then and has not since been lacking in diligence in not being informed of the true state of the affairs of the appellant or of the other so-called banks. That he

never, during the time while he was director, knowingly permitted to be made or assented to the making of any loans or advances or overdrafts to any person or persons in excess of the amount permitted by the National Banking Act (Act June 3, 1864, c. 106, 13 Stat. 99). That the amount which the appellant could lawfully loan between July 17, and August 13, 1908, to any one person, firm, or corporation, was $11,500. That on May 8, 1909, all the capital stock of the appellant was sold to E. T. Barnett and W. H. Parsons, who thereafter sold the same to R. C. Wood and John L. McGinn, who now own each 230 shares thereof. That at the time when Barnett and Parsons purchased the capital stock they did so with full knowledge of the affairs and conditions of the bank, and the price paid by them therefor did not contemplate any liability attached to and existing against the appellee for any act of his during his directorate. That when Wood and McGinn took an option from Barnett and Parsons to purchase the stock, they had full knowledge of the affairs and conditions of the appellant.

As a conclusion of law the court found that the appellee was not liable to the appellant in any sum upon any of the causes of action set forth, and a judgment was entered dismissing the action.

John L. McGinn, McGowan & Clark, and A. R. Heilig, all of Fairbanks, Alaska, and W. H. Metson, F. C. Drew, J. A. MacKenzie, and Miss E. H. Ryan, all of San Francisco, Cal. (Curtis Hillyer, of San Francisco, Cal., of counsel), for appellant.

Roy V. Nye, of Monrovia, Cal., and De Journel & De Journel, of San Francisco, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellant assigns error to the findings of the court as contrary to the evidence, to the refusal of the court to make findings as requested by the appellant, and to the conclusions of law because unsupported by the findings. The five causes of action are grouped in two classes. The second is for damages for the declaration of an illegal dividend. The others are based on loans made in excess of the amount permitted by the National Banking Law. As to the first and third causes of action for damages for the so-called loans to the Bonnifield and Cleary branches, the appellant relies upon reports to the Comptroller of the Currency, which were signed by the appellee, to show that the appellee had knowledge of the excessive amount of the loans. This contention is based on the theory that those branches were in fact banks separate and distinct from the appellant bank, and it is said that this is conclusively established by the finding of fact of the court below from which finding no appeal has been taken. It is also contended that the appellee is estopped to deny that the Bonnifield and Cleary branches were separate entities, for the reason that he, together with five other directors, signed his name to reports to the Comptroller of the Currency, representing them to be separate institutions, and because the appellant, relying thereon, brought the present suit. The question of estoppel may be disposed of in few words. The appellant knew all the facts in regard to the so-called branches, and it knew the exact nature of its own dealings therewith, and it has not been injured by the appellee's signature to the reports to the Comptroller, nor has it acted thereon to its own detriment.

[**2, 3**] It is true that the court below made a finding that the Bonnifield and Cleary institutions "were separate institutions from the First National Bank." That is not a finding of fact, however, but a conclusion of law. This is shown, first, by the opinion of the court below, in which it was said of these branches:

"They have every indication of being a part of the First National Bank. No characteristic is lacking."

But the court proceeded to say that, owing to the provision of law that a national bank cannot establish branch banks except in the manner provided by statute, "we must conclude that these banks must be held to be separate from the First National Bank."

It is shown, second, by the facts in regard to the relation of the appellant to the two branches as set forth in the findings of the court below, which prove beyond question that the Bonnifield and Cleary offices were part and parcel of the appellant bank, and that it was so generally understood by the public. Those offices were established by the appellant. They had no organization as banks and no capital stock. They acted under the directions of the appellant. They made loans out of funds furnished by the appellant, and only as authorized by the appellant. Their principal business was to purchase gold dust with the appellant's funds and forward the same to the appellant, and to receive for transmission to the appellant gold dust to be deposited to the credit of depositors who had accounts with the appellant. Each office was in charge of a manager or agent appointed by the appellant. The branch offices reserved no profits to themselves. All that they did was for the benefit and profit of the appellant. The appellant authorized a bank in Seattle and a bank in New York to cash drafts drawn by the appellant's agent at Bonnifield, and to charge the same to the appellant. It gave like authority to the Seattle bank and to a bank of San Francisco to cash drafts drawn by the agent at Cleary. The appellant conducted these gold dust purchasing agencies in competition with two other banks of Fairbanks, which had offices at the same places and for the same purposes. The Dome and Cleary Creek agencies sent statements to the appellant of their condition and their transactions, and the latter took and retained possession of all their books and records when the agencies were closed, and it still retains the same. In brief, the so-called Bonnifield and Cleary Banks were but agencies belonging to and operated by the appellant, and were not separate banking institutions.

The statements, therefore, found in the reports to the Comptroller, showing the condition of the accounts between the appellant and its respective agencies, and charging the agencies with moneys appearing in the form of indebtedness from those branches to the appellant, were not evidence of loans to the agencies, and were not notice to the appellee of loans to borrowers made under the authority of the appellant. There is no ground for charging the appellee with negligence in not discovering that excessive loans were being made at the local branches on Dome Creek and Cleary Creek. There was nothing on the books of the appellant at its place of business in Fairbanks to show

that loans were made to borrowers at either of those branches. It is true that Bonnifield and Manley borrowed from those branch offices sums of money in excess of the amount which the bank was permitted to loan. The appellee did not know this, however, and he was informed by Bonnifield and Manley that all money sent out to the branch offices was for the purpose of purchasing gold dust. The appellee had no reason to doubt this, and he should not be charged with negligence for his failure to go out to Dome Creek and Cleary Creek to examine the local books. A complete answer to the whole contention is that the appellee is not charged in the complaint with participation in excessive loans made by the local branch offices. The charge is that as director he participated in making loans to the branch offices. As we have seen, no such loans were made.

[4] The declaration of the dividend which is the basis of the second cause of action was but a transaction on the books of the appellant for the purpose of closing up the Cleary agency and transferring to the appellant at its bank at Fairbanks the assets of the agency. It was a dividend in form only, for the whole amount of the dividend declared, except $160, was immediately transferred by the stockholders to the bank. Again, the condition of the business of the appellant at that time, as the court below has found, was such as to justify the declaration and payment of the dividend, when account is taken of certain assets of the Cleary agency, then in control of the president of the bank, and subsequently turned over to the bank. We find no merit in the technical objection that those assets could form no basis for the declaration of the dividend, for the reason that they were not then collected, or that they had been assets of the Cleary agency.

The fourth and fifth causes of action require but brief consideration. The appellant admits that the only question arising upon these two causes of action is whether the appellee was chargeable with knowledge of the loans. There is nothing in the record to show that the appellee had or was chargeable with such knowledge. The loan to Witte resulted from cashing Witte's drafts. This was the act of the president and cashier of the bank, and the appellee had no notice of it or participation in it. The loan to Corson was likewise made without the knowledge or consent of the appellee, and in fact, as the court below found, it was not a loan in excess of the amount which the bank was permitted to loan when the usurious interest reckoned therein is eliminated.

[5-7] We are led to the inquiry: What is the measure of the appellee's legal liability to the bank of which he was director in causes of action such as are here brought before us? The appellee contends that the only rule of liability is that which is defined in Yates v. Jones National Bank, 206 U. S. 158, 27 Sup. Ct. 638, 51 L. Ed. 1002, where the court held that the National Banking Act itself affords the exclusive rule by which to measure the right to recover damages from directors based upon loss resulting solely from their violation of the duty expressly imposed upon them by a provision of the act, and that under that act proof of something more than negligence is required, and that there must be proof that the violation was in effect

intentional. In that case the charge against the directors was that they had made false reports of the condition of the bank, and the decision was controlled by the consideration that in making and publishing the official reports of the condition of the bank the directors were acting in obedience to the National Banking Act, and that, where a statute creates a duty and prescribes a penalty for nonperformance, the rule prescribed in the statute is the exclusive test of liability. That decision was followed and its doctrine was applied in Williams v. Spensley, 251 Fed. 58, 163 C. C. A. 308, where the suit was against directors on their liability for declaring dividends voted out of the capital stock, and where the court said:

"Appellant contends that the liability of a national bank director for voting and declaring dividends out of the capital is an absolute liability, and no question of good faith, diligence, or knowledge on the part of a director that such dividends may impair the bank's capital is involved. This contention must be rejected, both on principle and authority. See Yates v. Jones National Bank, 206 U. S. 158, 27 Sup. Ct. 638, 51 L. Ed. 1002."

The appellant in its brief admits that this is not an action founded upon the common-law liability of the appellee, but observes that under the facts developed at the trial the appellee was liable for willful neglect of his duty as director, within the doctrine of the decision of this court in McCormick v. King, 241 Fed. 737, 154 C. C. A. 439, where we held that the statutory liability of directors of a national bank, as prescribed in section 5239, Rev. St. (Comp. St. § 9831), is the measure of the right of recovery against them for loss resulting solely from their violation of the express provisions of the statute, but that that does not exclude their common-law liability for negligence in the management of business of the bank in violation of their oath of office which results in loss to its creditors and stockholders.

In the present case, in the first, third, fourth,. and fifth causes of action, the appellant expressly counts upon violations of that provision of the National Banking Act which prohibits loans in excess of the amount permitted by the act. As to those causes of action we think it clear that the rule of liability is that which is defined in Yates v. Jones National Bank, 206 U. S. 158, 27 Sup. Ct. 638, 51 L. Ed. 1002. But if we were to apply to all of these causes of action the common-law rule of liability recognized by this court in McCormick v. King, there is still nothing in the evidence to show that the appellee has been guilty of negligence in the management of the bank which has resulted in loss to its creditors or stockholders. In Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662, the court announced the rule of liability of directors, saying that directors of a national bank must exercise ordinary care and prudence in the administration of the affairs of the bank, but that they shall not be permitted to be shielded from liability because of want of knowledge of wrongdoing, if that ignorance is the result of gross inattention, and that they cannot be held responsible for losses resulting from the wrongful acts of other directors, unless the loss is the consequence of their own neglect of duty. In the McCormick Case this court said:

"No one would contend that a director must look into details of management, or keep closely in touch with routine matters, or know intimately to whom credits are given."

The appellee became a director of the bank in consequence of the insistence of the other directors. He was not a banking man. He knew nothing of the banking business, and when he discovered evidences of irregularity in the management of the bank's business he resigned his office. At times he protested against the method in which the business was done. He urged that the branch agencies be closed. In declaring the dividend which gives rise to the second cause of action, the directors acted under the advice of McGinn, the regularly retained attorney for the bank, who is now a director and one of the principal stockholders of the corporation which brings this suit.

We find no error. The judgment is affirmed.