FREEMAN v. JACKSON et al.

(District Court, N. D. Georgia. November 6, 1915.)

No. 25.

1. BANKS AND BANKING ☞254—NATIONAL BANKS—ACTION BY RECEIVER TO ENFORCE LIABILITY OF DIRECTORS.

The receiver of an insolvent national bank may maintain a suit for the benefit of its creditors and stockholders to recover from its directors for losses alleged to have been sustained in various ways by reason of their illegal, fraudulent, and negligent acts in the management of its business, and such suit is cognizable in equity.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 950–957; Dec. Dig. ☞254.]

2. BANKS AND BANKING ☞254—NATIONAL BANKS—SUIT BY RECEIVER AGAINST DIRECTORS—PLEADING.

Various exceptions to a bill by the receiver of an insolvent national bank against its directors to enforce their liability for losses sustained through their negligent and fraudulent acts considered.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 950–957; Dec. Dig. ☞254.]

In Equity. Suit by Lloyd R. Freeman, as receiver of the First National Bank of Lafayette, Ga., against T. A. Jackson, J. W. Cavender, S. A. Hunt, Jr., R. N. Dickerson, J. H. Hammond, M. A. McConnell, O. T. Simmons, and R. S. Garmony. On exceptions to bill, considered as motions to dismiss parts of bill. Sustained in part.

Thompson, Williams & Thompson and Sizer, Chambliss & Chambliss, all of Chattanooga, Tenn., and Shattuck & Shattuck and Rosser & Shaw, all of Lafayette, Ga., for plaintiff.

Maddox & Doyal, of Rome, Ga., and R. M. W. Glenn and Earl Jackson, both of Lafayette, Ga., for defendants.

NEWMAN, District Judge. This is a bill brought by Lloyd R. Freeman, as receiver of the First National Bank of Lafayette, against certain directors of that bank for losses sustained by the bank by reason of the negligence of the directors against whom the suit is brought, and their failure to comply with the provisions of the National Banking Act as to their duties and responsibilities. The bill contains allegations as follows:

(1) That notes already paid or renewed were carried on the books and records of the bank as "Bills Receivable," making up in that way a part of its claimed assets.

(2) That various and sundry loans were made in excess of the 10 per cent. of the unimpaired aggregate of its capital and surplus to

certain persons, firms, and corporations contrary to the provisions of law.

(3) That after making such loans to certain persons, firms, and corporations in an amount equal or nearly equal to or in excess of the sum allowed by law, loans were made to other individuals and entered in the names of accommodation makers or indorsers, financially irresponsible, the amount of the loans to be placed to the credit of individuals, firms, or corporations whose aggregate liabilities formerly equaled or nearly equaled or exceeded the amount that could be legally loaned to them, so that their liabilities were made to exceed the 10 per cent. of the unimpaired aggregate capital and surplus of the association.

(a) That in making these loans the defendants falsified the records of said association. That this is particularly true with reference to certain loans made to John H. Hill, Shinbone Red Ore Company, and Southern Red Ore Company; these being kindred corporations. That in order to cover up such illegal and fraudulent transactions the defendants carried some of the loans in the instance of one of said parties as the original payer, and in others as indorser, but all for the purpose of deceiving the banking association. That said directors allowed S. A. Hunt, Jr., to negotiate these loans for the bank when, had they exercised ordinary care, such care as a prudent person gives to such transactions, the defendant directors could have known these things and could have prevented the same. That the proceeds of each and all of said loans were appropriated by said John H. Hill and the defendant S. A. Hunt, Jr., and other persons whose names are unknown to the plaintiff.

(4) That overdrafts were improperly, illegally, and negligently permitted by persons, firms, and corporations lacking in financial means and responsibility and lacking in assets wherewith to pay the overdrafts and who were unworthy of the credit extended to them, which overdrafts have not been paid, and as a result of which the First National Bank of Lafayette suffered large losses, the extent of which is to the plaintiff unknown. That other said overdrafts were made by persons to the plaintiff unknown, but which, when discovered, he prays may be inserted herein, with proper and apt words to charge the defendant therewith and the amount be ascertained by proper accounting herein and decreed to be paid in this action.

(5) In the twelfth paragraph it is charged that, notwithstanding the prohibition contained in the act of Congress, the First National Bank of Lafayette, through its officers and directors, the defendants herein, acted as guarantor, accommodation indorser, or surety for the Shinbone Red Ore Company, a corporation, on a certain note of $6,000, together with interest thereon, which note was indorsed by Charles Reif, John H. Hill, M. O. Grady, and S. A. Hunt, Jr., which note was charged to the account of the First National Bank of Lafayette, carried in the First National Bank of Chattanooga on January 3, 1912, and also another note of $5,000, the maker of which was the Lookout Mountain Coal & Coke Company, which matured May 12, 1910, and held for collection by the Citizens' National Bank of Chattanooga.

227 F.—44

That these defendants permitted and allowed the First National Bank of Lafayette to become and be the accommodation indorser, guarantor, and surety for said corporations and persons without consideration, and when they knew that the corporations and the individual indorsers on said notes were lacking in assets wherewith to pay said obligations, and plaintiff avers that said notes were paid by the First National Bank of Lafayette, and that said the First National Bank of Lafayette, through its officers and directors, the defendants herein, illegally became the accommodation indorser, guarantor, and surety for various persons, firms, companies, and corporations other than those named, who are unknown to the plaintiff, but which will be shown by proof on the trial of this cause. That by reason thereof the First National Bank of Lafayette sustained large losses, the extent of which is to the plaintiff unknown, but which the plaintiff prays may be ascertained by a proper accounting herein and decreed to be paid in this action.

(6) That the said officers and directors, defendants herein, in violation of the Revised Statutes of the United States, declared and paid dividends annually when the said banking association did not have sufficient net profits with which to pay said dividends, and same were paid by defendants after the capital stock of said banking association had been impaired and its surplus exhausted. That on January 13, 1910, they declared and paid a dividend of 8 per cent. for the year 1909; and on January 11, 1911, declared and paid a dividend of 8 per cent. for the year 1910; and on January 10, 1912, declared and paid a dividend of 6 per cent. for the year 1911; and on January 14, 1913, declared and paid a dividend of 8 per cent. for the year 1912—all amounting in the aggregate to the sum of $15,000, said dividends being declared by the defendant directors in regular meetings of the board of directors, at which meetings all of the defendant directors were present. That all of said dividends so declared were paid to the stockholders of record of the First National Bank of Lafayette. That at the time of the declaration and payment of each and all of said dividends, said banking association did not have sufficient net profits or surplus out of which said dividends might lawfully have been declared and paid, but, on the contrary, the capital of said banking association had been impaired and its surplus exhausted by reason of the willful, wrongful, and negligent acts and omissions of the defendants, as set forth. That approximately one-half of the dividends so declared and paid were paid to the defendant directors, who were stockholders, which they received and appropriated to their own use. That certain of the dividends were paid to stockholders who were then or have since become insolvent, and by reason of this the bank suffered large losses, the extent of which is unknown, but which it is prayed may be ascertained by a proper accounting and decreed to be paid in this action. There are other allegations concerning this cause of action set forth to which further reference is unnecessary, as they simply strengthen the allegations with reference thereto.

(7) That in violation of the acts of Congress, said defendant officers and directors willfully misapplied and appropriated to their own

use certain moneys, funds, and credits of said banking association, and made false entries in the books, records, and statements of said banking association, with intent to injure or defraud the said banking association, its creditors and shareholders. Various allegations are then set out separately as a part of this allegation.

(8) That said directors and officers made false, deceitful, and misleading statements and representations, orally and in writing in the books and records of said banking association, and in published reports in newspapers, and in various ways in order to deceive, and did deceive, said banking association, its shareholders and creditors, and setting out certain separate and distinct transactions of the kind referred to.

(9) That the national banking laws were violated and their common-law duties to diligently safeguard and protect the funds of said banking association ignored, in that they and each of them, from the very time of their election as directors of the banking association, borrowed large sums of money from it for their individual uses, without having been directed or authorized by a resolution of their body. Then a list of those instances are set out, and it is further alleged that the defendants J. W. Cavender and T. A. Jackson well knew that these loans were being made, or by the exercise of reasonable and ordinary care could have known, yet, notwithstanding the said Cavender and Jackson permitted said officers to withdraw funds from the banking association and the banking association suffered losses as stated.

(10) That the defendants, as directors of said banking association, were required at all times to have on hand, in lawful money of the United States, an amount equal to at least 15 per centum of the aggregate amount of deposits, and, whenever the lawful money of said banking association came below 15 per centum of deposits, they were prohibited from increasing the liabilities of said banking association by making new loans or discounts, otherwise than by discounting or purchasing bills of exchange payable at sight, and they were prohibited from declaring or paying any dividend out of the profits of said association until the required proportion between the aggregate amount of its outstanding notes of circulation and deposits and its lawful money had been restored; but, notwithstanding this, the defendants violated this statute, in that they wholly failed to have on hand, in lawful money of the United States, an amount equal to 15 per centum of the aggregate amount of its deposits. And further, after being charged with knowledge that the amount of lawful money was below 15 per centum of its deposits, they unlawfully increased the liabilities of the bank by making new loans.

(11) That by section 5191 of the Revised Statutes of the United States (Comp. St. 1913, § 9746) the defendants, as directors of said banking association, were required to keep a reserve for such association equal to 15 per centum of its deposits, and it is provided in section 5192 of said statutes (Comp. St. 1913, § 9747) that three-fifths of this reserve may consist of balances due the bank from banks designated by the Comptroller of the Currency in any of the reserve

cities, the other two-fifths to be in said bank; and it is averred that the defendants and each of them knowingly violated this statute, in that they failed to have and provide in places designated a reserve equal to 15 per centum of the deposits of said banking association at all times between January, 1910, and the closing of the bank in 1913. There are further allegations in connection with this special claim which will not be reiterated.

(12) That the defendants, as officers and directors of the First National Bank of Lafayette, were required at all times to keep in the treasury of the United States a sum equal to 5 per cent. of the circulation of said bank, this 5 per cent. fund to be carried as reserve on deposits; but, notwithstanding such requirement, the defendant directors and officers failed to keep said sum at all times with said treasurer. That the officers of the Treasury Department called the attention of defendants to the willful violation of said statutes, as shown in the correspondence between said department and the defendants herein; and that by reason thereof the banking association suffered large losses.

This last charge is contained in paragraph 19 of the bill. I do not think this allegation is sufficient, and unless it is amended and made sufficient it should be stricken out.

(13) It is next charged that the defendants allowed certain slips for moneys withdrawn to be kept in a certain receptacle at the bank and to be treated as cash items, and that by this means the bank was injured. It is then alleged that the amount of loss by reason of these cash items carried on slips of paper is unknown, but will be shown by proof.

I think this should be amended in some way, as it shows on its face only a bad method of doing business without any financial loss. If it is amended so as to show to what extent this was done and the loss sustained by reason of such method of doing business, it would be satisfactory.

(14) The next charge is the manner in which S. A. Hunt, Jr., was allowed to transact the business of the bank as cashier, that he was engaged in speculation and was regarded as a promotor, in connection with one John H. Hill and other persons, in dealing in mining properties, and that the directors at various times had notice concerning Hunt's unfitness for the position of cashier, and that they were placed on actual notice by and through correspondence with the Comptroller's office and said banking association and with defendant directors, which correspondence shows that defendant Hunt was wholly incompetent for his position and that he habitually and knowingly violated the banking laws.

This allegation might be important in connection with other allegations made in this suit, but of itself it shows no particular loss in this way.

(15) That the by-laws of the bank, which were adopted by the board of directors at its regular meeting on April 8, 1904, and which were in full force and effect continuously until the closing of the bank, contained the following provisions:

"8. All loans made by his bank, except those mentioned in by-laws Nos. 9, 11 and ———, must be by the written consent of the majority of the board of directors, to the cashier, and in no case upon one's credit, but upon good and sufficient security.

"9. The cashier may make loans up to $100.00 but the aggregate of such loans to any individual or firm shall not exceed that amount.

"10. The financial agent may make demand loans whenever the funds of this bank exceed the home requirement."

That notwithstanding the plain and unambiguous provisions of said by-laws, Hunt was allowed continually to violate the same, by reason of which the banking association, its creditors and shareholders, suffered large losses, as fully set forth in Exhibit B filed with the complaint, and also other losses to the plaintiff unknown but which it is prayed may be ascertained, etc.

(16) That by various sections of the Revised Statutes relating to National Banks, the Comptroller of the Currency is charged with the duty of generally supervising the affairs of national banks, and that in pursuance of such duties the Comptroller of the Currency did, at various times, address communications to the First National Bank of Lafayette and to its president and its directors, relating to its reserve funds, excessive loans, and other matters set forth in the complaint. It is said that by the failure of the defendants to heed such warnings and admonitions by the Comptroller, the bank suffered large losses.

(17) That by reason of the insolvency of the association and the large losses sustained, the Comptroller of the Currency has levied an assessment of 75 per cent. against the shareholders of the association, which has been in part collected and is now being collected, and that when this assessment is collected in full the association will still be unable to meet all of its liabilities; that the assets of the association have been sold in part, and the plaintiff is proceeding with the liquidation and disposition of the other assets and the final liquidation of the association, but that when the liquidation has been finally completed said banking association will be unable to meet its obligations and will still be insolvent.

(18) That by reason of the matters hereinbefore set forth and of other matters and other losses which are to the plaintiff unknown, but which when discovered the plaintiff prays may be inserted herein with proper and apt words to charge the defendants with liability therefor, the First National Bank of Lafayette, its creditors and shareholders, have suffered loss in excess of $50,000, the precise extent of which is to the plaintiff unknown, but which he prays may be ascertained and decreed to be paid in this action.

(19) That the directors of said banking association could have discovered, by the most cursory examination of its books, that the loans referred to as being in excess of one-tenth part of the unimpaired aggregate capital and surplus were in fact excessive loans, and that loans alleged herein to have been made upon accommodation paper were in fact accommodation loans, and could have ascertained and discovered, by inquiry in the community where they lived and conducted their business, that the persons and companies to whom loans were made, and who are herein alleged to have been financially irresponsible, were

in fact irresponsible and without assets wherewith to pay said loans, and could have discovered, at the time of the declaration of dividends herein set forth, that the banking association had not earned profits from which dividends were properly payable, and by such examination could and would have discovered that the banking association was holding and carrying many loans upon which interest remained unpaid for a period of six months and which were not secured or in process of collection, and that interest upon other loans of large amounts was being paid by discounting new notes and merely adding the interest in the notes, and by making such examination they would have discovered all the wrongful and negligent acts in relation to the operation of said bank hereinbefore set forth. But that said directors failed and neglected to make such examination, and as a result of such carelessness and negligence on their part the said banking association suffered large losses, the exact amount of which is to the plaintiff unknown, etc.

(20) That all of the acts herein set out were unknown to the Comptroller of the Currency, to the creditors and shareholders of said banking association, and to the receiver herein, until the closing of the bank on July 19, 1913, when for the first time they were discovered by any of said parties. That said defendants, and each of them, concealed said wrongful, negligent, and fraudulent acts and conduct aforesaid from said banking association, its creditors and shareholders.

The prayers are that an account be taken and stated, and an investigation made under the direction of the court:

(1) Of all losses, including interest at the legal rate, sustained by the First National Bank of Lafayette, its creditors and shareholders, otherwise than in the usual and ordinary course of business.

(2) Of all losses by reason of lending sums of money to persons, firms, or corporations in excess of the amount specified by law, by reason of carrying on the books and records of the bank duplicate notes, and by the unlawful withdrawal of amounts from the treasury by said banking association, and that said defendants, or such of them as may be found to be responsible for such losses, when the extent thereof shall be ascertained, may be decreed to pay the said losses to the plaintiff for the benefit of the said banking association, its creditors and shareholders.

(3) As to all losses sustained by reason of lending money to persons, firms, or corporations lacking in financial means and responsibility, and lacking in assets wherewith to pay said loans, and that the defendants, or such of them as shall be found to be responsible therefor, when the extent thereof shall be ascertained, may be decreed to pay the same to the plaintiff for the benefit of the banking association, its creditors and shareholders.

(4) As to all losses sustained by reason of overdrafts in excess of deposits existing therein by persons, firms, and corporations lacking in financial means and responsibility, and the same prayer as to the payment thereof to plaintiff.

(5) As to all losses sustained by reason of improper and illegal indorsement of accommodation bills of exchange, notes, etc., with the same prayer as to payment to plaintiff.

(6) As to all losses sustained by reason of the improper declaration and payment of dividends upon the capital stock of said bank in the absence of any net profits or surplus out of which said dividends might lawfully have been declared and paid, with the same prayer as to payment thereof to the plaintiff.

(7) As to all losses sustained by reason of the illegal acts and violations of the National Bank Act permitted or committed by the defendants hereto and by reason of violations of the by-laws, and of the negligence of defendants in the discharge of their duties as officers and directors and the lack of reasonable care, prudence, and diligence in the premises, with the same prayer as to payment to plaintiff.

(8) As to all losses sustained by reason of the negligence and wrongful acts of the defendants in retaining in office, as cashier, the defendant S. A. Hunt, Jr., after the said directors knew, or should have known in the exercise of ordinary care and prudence, that he was unfit for and incompetent to hold said office, and by reason of permitting said S. A. Hunt, Jr., to participate in any way in the management of the affairs of said bank and in the investment of its funds, with the same prayer as to payment to plaintiff.

(10) For such other, further, additional, and general relief in the premises as may be just and equitable. And

(11) For subpœna, etc.

To this bill the defendants file what they call "Exceptions," but which, I presume, may be considered as a motion to dismiss the bill, or parts of it, for the reasons stated.

[1] The first exception is:

"That a court of equity has no jurisdiction over the matter and things alleged in the bill of complaint, the plaintiff having adequate remedy at law."

I do not think so. I think this case is cognizable in equity.

[2] Second:

"That the averments of said bill of complaint are insufficient, either in law or in equity, to authorize the granting of the relief prayed for."

I do not think so. I think the causes of action set forth in most of the items are sufficiently stated and well stated.

Third:

"That the receiver in this case has no legal or equitable right to sue for the benefit of stockholders."

This objection to the bill is insufficient also, and cannot be sustained.

Fourth:

"That the defendants are not liable, under the provisions of common law, on account of any of the matters or things alleged in the bill of complaint."

It is sufficient in reference to this to quote a paragraph from the decision of the Supreme Court of the United States in Yates v. Jones National Bank, 206 U. S. 158, 180, 27 Sup. Ct. 638, 645 (51 L. Ed. 1002), as follows:

"Of course, in what has been said we have confined ourselves to the precise question arising for decision, and therefore must not be understood as ex-

pressing an opinion as to whether and to what extent directors of national banks may be civilly liable by the principles of common law for purely voluntary statements made to individuals or the public, embodying false representations as to the financial condition of the bank, by which one who has rightfully relied upon such representation has been damaged. And because we have applied in this case, to the duty expressly imposed by the statute, the standard of conduct established therein, we must not be considered as expressing an opinion upon the correctness of the views enunciated by the court below concerning the standard which should be applied solely under the principles of the common law, to fix the civil liabilities of directors in an action of deceit. See Briggs v. Spaulding, 141 U. S. 132 [11 Sup. Ct. 924, 35 L. Ed. 662]."

This case in its various aspects may well be considered in the light of this decision of the Supreme Court and the rule therein stated applied.

Fifth:

"That the liability of these defendants, on account of the matters and things set out in the bill of complaint, is limited by the provisions of the National Banking Acts to damages sustained by reason of violations of said National Banking Acts, knowingly made by them or knowingly permitted to be made by any of the officers, agents or servants of the banking association."

This may be disposed of as was the fourth, above.

Sixth:

"That the averments of the bill are too general, indefinite, vague, and uncertain, and set forth no issuable facts, particularly with reference to the alleged acts of negligence on the part of these defendants or either of them, and the losses alleged to have been sustained by reason of such alleged acts of negligence, on the part of these defendants or either of them."

This objection is overruled.

Seventh:

"That the averments of the bill are insufficient, in that they fail to set up the knowledge of the defendants, and each of them separately, as to each of the respective matters and things alleged to have occasioned the loss complained of, and particularly with reference to the matters and things set out in paragraphs 7 to 20, inclusive."

I think the bill is ample in this respect, and this objection is overruled.

Eighth:

"That the averments of the bill and of each and every paragraph thereof separately are insufficient and indefinite as to the loss sustained on account of any of the matters and things set out in said bill of complaint, and, in the absence of definite and certain averments as to losses occasioned by such matters and things, no recovery can be had against these defendants or any of them, and only the United States, or its public officials, could take advantage of such alleged violations of the National Banking Acts in proceedings to forfeit the charter of said banking association or to have a receiver appointed on account thereof; and especially is this true with reference to the matters and things set out and complained of in paragraphs 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, and 23 of the bill of complaint."

I think this objection is well taken as to some of the paragraphs in the bill, and these paragraphs have been referred to above. Unless they are amended they will be held insufficient and stricken.

Ninth:

"That no list of stockholders for whose benefit this suit is filed, and an accounting asked, is set out in the bill."

This objection is overruled.

Tenth:

"That the accounting prayed for in the bill of complaint can only be had at the instance of such stockholders as ask for such an accounting, and the recovery, if any, would be limited to the amount of damages sustained by each of them respectively."

This objection is overruled.

Eleventh:

"That no statement of the financial affairs of said banking association is set out in said bill of complaint, from which it can be determined whether or not said banking association is really insolvent and whether or not a recovery against these defendants in this suit is necessary for the benefit of the creditors of said banking association."

It is alleged in the bill, as I understand it, that, even if the assessment levied by the Comptroller is collected and the amount sued for collected and added to it, it would not be sufficient to pay the liabilities of the bank. I think this is sufficient.

Twelfth:

"That a receiver cannot recover, in this case, for the benefit of stockholders, anything on account of the alleged illegal declaration and payment of dividends, for the reason that said stockholders are estopped by reason of having received said dividends."

This makes a difficult question, of course, and one of the most troublesome matters in the case. Still, I think, upon a proper accounting this can be adjusted in such way as to work no injustice to any one.

Thirteenth:

"That no list of creditors and depositors of said banking institution is set out in said bill of complaint, and it is not alleged when the indebtedness of said creditors was incurred or the deposits were made, for the payment of which a recovery is sought in this case, nor is it alleged the amount of such indebtedness or deposits as a whole, nor is it alleged the respective amounts of such indebtedness or deposits due and owing to said alleged creditors and depositors, either at the time of the closing of said bank or at the time of the filing of this bill of complaint."

I think the bill is sufficient as it stands, with the exceptions I have heretofore noted.

As to the objection in the answer, on the ground of nonjoinder of certain parties, I think the plaintiff has set out such directors as seem to me liable for the particular acts of which he complains. I think, applying the rule which I understand to be laid down in Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662, the directors against whom the charges are made in the bill are made defendants herein. The motion to strike, if it be a motion of that sort on this ground, is overruled.

The result of the foregoing is that the exceptions to the bill, which are considered, as I have stated, as grounds of a motion to strike the

whole or certain parts of the bill, are overruled with the exception of the two matters referred to, wherein I think they are entirely insufficient and should be amended or stricken.

As an answer to the bill is filed, I suppose the case will be in condition, when an order in line with the above is entered, for reference to a master, and this should be made at once and the case speeded as much as possible, as there has already been considerable delay owing to the pressing condition of business in the court.

An order may be taken in accordance with what has been said as to these exceptions or motions to dismiss.