The NOEL ESTATE, Inc., and the Intervenor, James R. Russell, Stockholders' Agent, Appellants,

v.

COMMERCIAL NATIONAL BANK IN SHREVEPORT, Appellee.

No. 15854.

United States Court of Appeals
Fifth Circuit.

April 25, 1956.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

In the footnote to Connolly v. Commercial Nat. Bank in Shreveport, 5 Cir., 189 F.2d 608, we referred to a number of the opinions dealing with the long extended litigation between representatives of the stockholders of Commercial National Bank of Shreveport (Old Bank) and the present appellee (New Bank). Now the present appellant seeks a declaratory judgment on behalf of itself and other stockholders of the Old Bank to the effect that the New Bank holds title to 4120% shares of stock of Continental American Bank & Trust Company as trustee for the stockholders of the Old Bank.

The district court sustained a motion to dismiss for want of jurisdiction, and in the alternative stated that, if mistaken, the complaint should nevertheless be dismissed upon other grounds.[1]

The sole ground asserted for federal jurisdiction is that the matter in controversy arises under the laws of the United States. 28 U.S.C.A. § 1331. Specifically, the claim is that, under 12 U.S.C.A. § 24, subd. 7,[2] the New Bank lacked the corporate power to purchase the shares

T. E. Mosheim, Charles P. Siess, Houston, Tex., for appellants.

Charles D. Egan, Sidney M. Cook, Shreveport, La., for appellee.

1. Failure to state a claim upon which relief can be granted; res judicata; equitable estoppel; and prescription or limitations.

2. "§ 24 *Corporate powers of associations*
* * * * *
"Seventh. To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this chapter. The business of dealing in securities and stock by the association shall be limited to purchasing and selling such securities and stock without recourse, solely upon the order, and for the account of, customers, and in no case for its own account, and the association shall not underwrite any issue of securities or stock: *Provided,* That the association may purchase for its own account investment securities under such limitations and restrictions as the Comptroller of the Currency may by regulation prescribe. In no event shall the total amount of the investment securities of any one obligor or maker, held by the association for its own account, exceed at any time 10 per centum of its capital stock actually paid in and unimpaired and 10 per centum of its unimpaired surplus fund, except that this limitation shall not require any association to dispose of any securities lawfully held by it on August 23, 1935. As used in this section the term 'investment securities' shall mean marketable obligations, *evidencing* indebtedness of any person, copartnership, association, or corporation in the form of

of stock of Continental for its own account.

In the absence of a statute imposing any penalty or forfeiture applicable to the particular transaction, and as to executed contracts, the Supreme Court has repeatedly held that the United States alone can object to the want of authority of a national bank. Thompson v. Saint Nicholas Nat. Bank, 146 U.S. 240, 251, 13 S.Ct. 66, 36 L.Ed. 956. "A private person cannot, directly or indirectly, usurp this function of the government." National Bank v. Mathews, 98 U.S. 621, 629, 25 L.Ed. 188. As said by Mr. Justice Hughes in Kerfoot v. Farmers' & Merchants' Bank, 218 U.S. 281, 287, 31 S.Ct. 14, 15, 54 L.Ed. 1042: "This rule, while recognizing the authority of the government to which the corporation is amenable, has the salutary effect of assuring the security of titles and of avoiding the injurious consequences which would otherwise result."

Appellant points out that the sentence emphasized in Footnote 2 and certain other provisions came into the statute by amendments of 1933 and 1935, 48 Stat. 184; 49 Stat. 709, after the decisions in the cases cited and many like decisions collected in Note 241 to 12 U.S.C.A. § 24. We find nothing, however, in any of the amendments indicating an intention to depart from the principle of those cases, or to make such transactions subject to attack by persons other than the Government. We agree with the district court that the claim under the federal statute is "wholly insubstantial and frivolous" and cannot support federal jurisdiction. Bell v. Hood, 327 U.S. 678, 682, 683, 66 S.Ct. 773, 90 L.Ed. 939.

The judgment is therefore

Affirmed.

bonds, notes and/or debentures commonly known as investment securities under such further definition of the term 'investment securities' as may by regulation be prescribed by the Comptroller of the Currency. *Except as hereinafter provided or otherwise permitted by law, nothing herein contained shall authorize the purchase by the association for its own account of any shares of stock of any corporation.  *  *  *"*. (Emphasis ours.)