479 F.2d 131
 Elizabeth J. RUSSELL, individually and as representative of
all Capital Investment Service customers,
Plaintiff-Appellant,
v.
CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF
CHICAGO, a National Banking Association, Defendant-Appellee.
 No. 72-1185.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 23, 1973.
Decided June 7, 1973.
 
 Maurice James Moriarty, Chicago, Ill., for plaintiff-appellant.
 Miles G. Seeley, Bryson P. Burnham, Chicago, Ill., for defendant-appellee.
 Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.
 STEVENS, Circuit Judge.
 
 
 1
 Plaintiff's complaint alleges that, in response to the Bank's solicitations, she and other members of the public each invested at least $20,000 in an "open-end mutual fund" established by the Bank; that the aggregate amount of approximately $7,500,000 invested by similarly situated participants "placed the defendant in the business of operating a mutual investment fund contrary to and in violation of Secs. 16 and 21 of the Glass-Steagall Act;"[1] and that a large purchase of the common stock of Penn Central Company, which was both an obligor and depositor of the Bank, resulted in a substantial loss to the fund. Suing on behalf of all participants in the fund, she prays for a judgment of $7,500,000 plus interest and costs.[2] The question presented by her appeal is whether the district court properly dismissed the complaint on the ground that she does not have standing to maintain an action for damages for violation of Secs. 16 and 21 of that Act.[3] We affirm.
 
 
 2
 *****
 
 
 3
 * * *
 
 
 4
 We first put to one side certain questions which we do not decide. There are references in the record[4] to the fact that plaintiff is a depositor in the Bank as well as a participant in the fund. Quite clearly the attempt by a fund participant to surcharge the Bank in the amount of any decrease in the net assets of the fund presents an issue with respect to which the interests of Bank depositors are in square conflict with those of fund participants. Whether that conflict would disqualify plaintiff as an adequate representative of the class described in the complaint is one question we need not decide because the complaint itself refers only to plaintiff's status as a participant. For the same reason our ruling on the sufficiency of her pleading does not determine the standing of a bank's depositors to litigate questions arising out of alleged violations of the Glass-Steagall Act.
 
 
 5
 Nor do we comment on the validity of the Bank's arguments that the dismissal should be sustained on the alternate grounds (1) that the required jurisdictional amount has not been alleged, since plaintiff does not claim an individual loss of over $10,000, or (2) that in any event the facts do not disclose a violation of Glass-Steagall.[5] Finally, we note that plaintiff has expressly disavowed any theory of recovery except her claim that Secs. 16 and 21 of the Glass-Steagall Act have been violated.[6] The violation, if it occurred, is a consequence of the relationship between the Bank and the participants in the fund. If their interests are "securities" within the meaning of the Act, the violation exists no matter how prudently or profitably the fund assets may have been managed; conversely, if their interests are not themselves securities, the mere fact that the Bank may have acted negligently or even improperly in its use of the plaintiff's funds to invest in Penn Central stock is completely irrevelant. This is not a mismanagement case. The narrow issue, therefore, is whether participants in an open-end mutual investment fund are entitled to recover their losses if they can prove that operation of the fund violates Secs. 16 and 21 of the Glass-Steagall Act.
 
 
 6
 There is no express statutory authorization for private action to redress a violation of Glass-Steagall. Of course, the absence of an express private remedy does not necessarily resolve the issue. For in certain situations the Supreme Court has found or created an implied remedy in favor of private parties within the class, or classes, of persons intended to be protected by a statute.
 
 
 7
 Thus, in Texas & Pacific Ry. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874, the Court found an implied damage remedy because the plaintiff employee was a member of the class "for whose especial benefit" the Federal Safety Appliance Act had been passed. It stated:
 
 
 8
 "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in 1 Comyn's Dig., title 'Action upon Statute' (F), in these words: 'So, in every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law.' " 241 U.S. at 39, 36 S.Ct. at 484.
 
 
 9
 In J. I. Case v. Borak, the Court held that unless relief were implied for "victims of deceptive proxy statements . . the whole purpose of [Sec. 14(a) of the Securities Exchange Act of 1934] might be frustrated." 377 U.S. 426, 434-435, 84 S.Ct. 1555, 1561, 12 L.Ed.2d 423. See also Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Allen v. State Board of Elections, 393 U.S. 544, 554-557, 89 S.Ct. 817, 22 L.Ed. 2d 1. Cf. Reitmeister v. Reitmeister, 162 F.2d 691, 694 (2d Cir. 1947).
 
 
 10
 In Investment Co. Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367, following its holding in Data Processing v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184, the Court held that companies engaged in the business of operating mutual investment funds had standing to attack portions of a regulation issued by the Comptroller of Currency which permitted national banks to become competitors of the plaintiffs. Although the Bank argues vigorously to the contrary, we may assume also that the interests of depositors or stockholders of the Bank may be sufficient to support a similar action.
 
 
 11
 In light of the analysis of the legislation and its history in the Camp opinion, however, our understanding of the interests at stake leads to the conclusion that the position of a fund participant seeking to recover damages from the Bank is quite different.
 
 
 12
 Because of its expertise in the money market, a bank may desire to enter allied lines of activity which involve greater profit potential and greater risk than traditional commercial banking. Federal banking laws, although permitting some such allied activities,[7] severely limit and regulate the kinds of risks a national bank may take.
 
 
 13
 The basic reason for the legislation does not reflect a concern that the bank will be less capable of performing the activity efficiently than other entrepreneurs; rather, it reflects a desire to minimize the risks of loss or insolvency to the bank itself.[8] In short, the prohibition of an activity such as operation of a common trust fund is not based on any assumption that participants in such funds need protection from bank entry into this market; rather, it rests on the belief that the higher entrepreneurial risks associated with this activity[9] might jeopardize the overriding interests of depositors and the public in maintaining the solvency of banks and confidence in the banking system.[10]
 
 
 14
 If we assume as a general proposition that banks are at least as competent as other firms to operate mutual investment funds, it is manifest that participants in such funds would not be injured and, indeed, should benefit from a rule that would permit banks to enter that area of economic activity.[11] Participants, therefore are not members of "the class for whose especial benefit the statute was enacted." Indeed, to allow them to recover damages resulting from nothing more than a decline in value of a prudently managed fund simply because the fund itself was created or operated in violation of Secs. 16 and 21 of the Glass-Steagall Act would impair the precise interests that the statute was enacted to protect.[12]
 
 
 15
 In our opinion, a fair evaluation of "the congressional policy underpinning the substantive provisions of the statute"[13] requires rejection of the implied damage remedy plaintiff seeks to assert in this case. The judgment is
 
 
 16
 Affirmed.
 
 
 
 [1]
 The quotations are from plaintiff's complaint
 
 
 [2]
 The prayer of the complaint reads: "Wherefore, plaintiff, Elizabeth J. Russell, individually and on behalf of all those who have made capital contributions to the Capital Investment Service at the Continental Bank, prays judgment against the defendant in the sum of Seven Million Five Hundred Thousand Dollars ($7,500,000.00) plus interest from the date of investment and costs of this suit."
 
 
 [3]
 The relevant portions of those sections of the Glass-Steagall Act provide:
 "Seventh. The business of dealing in securities and stock [by a national bank] shall be limited to purchasing and selling such securities and stock without recourse, solely upon the order, and for the account of, customers, and in no case for its own account . . .
 ". . . Except as hereinafter provided or otherwise permitted by law, nothing herein contained shall authorize the purchase by [a national bank] for its own account of any shares of stock of any corporation." 12 U.S.C. Sec. 24.
 "[I]t shall be unlawful . . . [f]or any person, firm, corporation, association, business trust, or other similar organization, engaged in the business of issuing, underwriting, selling, or distributing, at wholesale or retail, or through syndicate participation, stocks, bonds, debentures, notes, or other securities, to engage at the same time to any extent whatever, in the business of [deposit banking]." 12 U.S.C. Sec. 378.
 
 
 [4]
 Before the district court dismissed the complaint, the parties engaged in discovery. Although facts developed by that discovery are in the record before us, we do not consider them in connection with our ruling on the sufficiency of the complaint
 
 
 [5]
 In Investment Co. Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367, the Supreme Court held that the sale of interests in the type of fund established by First National City Bank was a sale of "securities" condemned by Secs. 16 and 21. We do not decide whether plaintiff's investment of $20,000 with the defendant Bank was a comparable purchase of a "security," or whether, as the Bank argues, our decision in Milnarik v. M-S Commodities, Inc., 457 F.2d 274 (7th Cir. 1972), is relevant to this issue
 
 
 [6]
 Brief for plaintiff-appellant, page 11. In her memorandum opposing the motion to dismiss, plaintiff conceded that "the Complaint was not intended to assert any claim except one based on violation of Sections 16 and 21 of the Glass-Steagall Act."
 
 
 [7]
 "No provision of the banking law suggests that it is improper for a national bank to pool trust assets, or to act as a managing agent for individual customers, or to purchase stock for the account of its customers. But the union of these powers gives birth to an investment fund whose activities are of a different character." Investment Co. Institute v. Camp, 401 U.S. 617, 624-625, 91 S.Ct. 1091, 1096, 28 L.Ed.2d 367
 
 
 [8]
 "The Glass-Steagall Act reflected a determination that policies of competition, convenience, or expertise which might otherwise support the entry of commercial banks into the investment banking business were outweighed by the 'hazards' and 'financial dangers' that arise when commercial banks engage in the activities proscribed by the Act." Id. at 630, 91 S.Ct. at 1098
 
 
 [9]
 "It is not the slightest reflection on the integrity of the mutual fund industry to say that the traditions of that industry are not necessarily the conservative traditions of commercial banking. The needs and interests of a mutual fund enterprise more nearly approximate those of securities underwriting, the activity in which bank security affiliates were primarily engaged. When a bank puts itself in competition with mutual funds, the bank must make an accommodation to the kind of ground rules that Congress firmly concluded could not be prudently mixed with the business of commercial banking." Id. at 637, 91 S.Ct. at 1102
 Earlier in its opinion the Court noted: "Senator Glass made it plain that it was 'the fixed purpose of Congress' not to see the facilities of commercial banking diverted into speculative operations by the aggressive and promotional character of the investment banking business." Id. at 632, 91 S.Ct. at 1099.
 
 
 [10]
 The Glass-Steagall Act was enacted "[t]o provide for the safer and more effective use of the assets of banks, [and] to prevent the undue diversion of funds into speculative operations; . . . ." 48 Stat. 162. "There is no dispute that one of the objectives of the Glass-Steagall Act was to prohibit commercial banks, banks that receive deposits subject to repayment, lend money, discount and negotiate promissory notes and the like, from going into the investment banking business." 401 U.S. at 629, 91 S.Ct. at 1098
 
 
 [11]
 "From the perspective of competition, convenience, and expertise, there are arguments to be made in support of allowing commercial banks to enter the investment banking business. But Congress determined that the hazards outlined above made it necessary to prohibit this activity to commercial banks. Those same hazards are clearly present when a bank undertakes to operate an investment fund." Id. at 636, 91 S.Ct. at 1101
 
 
 [12]
 The Supreme Court's holding in Thompson v. St. Nicholas National Bank, 146 U.S. 240, 248, 13 S.Ct. 66, 68, 36 L.Ed. 956, apparently rested in part on its agreement with the New York Court of Appeals "that it would defeat the very policy of an act intended to promote the security and strength of the national banking system, if its provisions should be so construed as to inflict a loss upon the banks, and a consequent impairment of their financial responsibility."
 
 
 [13]
 See Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 402, 91 S.Ct. 1999, 2008, 29 L.Ed.2d 619 (Mr. Justice Harlan concurring)