Richard A. STEIN, Plaintiff,

v.

Willard C. GALITZ et al., Defendants.

No. 78 C 1249.

United States District Court,
N. D. Illinois, E. D.

Nov. 30, 1978.

Paul Homer, Friedman & Koven, Chicago, Ill., for plaintiff.

Richard J. Witry, McCarthy, Scheurich, Duffy, Neidhart & Snakard, Mitchell J. Melamed and Jay A. Frank, Morton C. Kaplan, Chicago, Ill., for defendant Allen Schmidt.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

The plaintiff in this action, Richard A. Stein, is a private developer under contract with the Department of Housing and Urban Development ("HUD") to participate in the federal government's program of subsidized rental housing. The complaint alleges that the plaintiff has received approval from HUD and the Illinois Housing Development Authority ("IHDA") for the construction of a federally-subsidized low-income housing unit for the elderly on a certain parcel of land at the corner of Lincoln and Galitz Avenues in the Village of Skokie, and that in March, 1976, the Board of Directors of the Village of Skokie adopted an ordinance approving the sale of the parcel of land to Stein for this purpose.

The complaint further charges that in May, 1976, a "meritless and false complaint" was filed in the Circuit Court of Cook County, which sought declaratory and injunctive relief against construction of the proposed low-income housing unit. The plaintiffs in that action were various citizens of Skokie. Stein charges that this litigation was financed by the First National Bank of Skokie (the "Bank"). Judgment for Stein was entered on November 30, 1977.

On April 4, 1978, the instant suit was filed against the individual citizens who were plaintiffs in the state action (The "Lurie defendants"),[1] the Bank, and the individual directors of the Bank (the "directors").[2]

Count I of the complaint charges that the directors have violated the National Bank Act, 12 U.S.C. § 21 et seq., and thus have injured the plaintiff in the amount of $500,000., representing his costs of defending the state court case, and his losses from interference with his business relationships and expectancies. Count II alleges that all of the defendants have violated the Low-Rent Housing Act, 42 U.S.C. § 1401 et seq., and thus have caused injury to the plaintiff in the above-described amount of $500,000. Count III alleges that all defendants are liable for the tort of intentional interference with contractual relationships and prospective advantage, and prays damages in the same amount as Counts I and II. Jurisdiction is based solely on federal question and pendent jurisdiction under 28 U.S.C. §§ 1331, 1337.

On October 27, 1978, the Lurie defendants were voluntarily dismissed, pursuant to an agreement whereby they promised to withdraw their appeal from the state court's decision in favor of Stein. The remaining defendants have filed a motion to dismiss the complaint.

The defendants' motion raises various arguments directed against Counts I and II. These will be separately discussed.

A. *Count I—The National Bank Act, 12 U.S.C. § 21, et seq.*

Count I asserts that the directors' conduct in permitting bank funds to be used to finance the state litigation was in excess of their authority under § 24 of the National Bank Act.[3] That section is entitled "Corporate powers of associations", and it lists various powers granted to national banks. Included among these powers are the following:

"First. To adopt and use a corporate seal.

---

1. Max Lurie, Morton J. Liebling, Ann M. Harkess, Morris Gosenpud, Rosemary A. Schmitt, Allen L. Schmidt.

2. Willard C. Galitz, John T. Banghart, George E. Blameuser, John M. Duffy, Alvin T. Guenther, Edward J. Harms, Neil J. King, Erman G. Kramer, James V. Mancuso, Louis S. Oosten, Milton E. Remke, Roger B. Schoeneberger, William Lyle Stielow, Charles C. Wooster.

3. This provision was enacted as § 16 of the Glass-Steagall Act of 1933. The other provisions of this act are codified in various sections scattered through Title 12.

"Second. To have succession . . .

"Third. To make contracts.

"Fourth. To sue and be sued . . .

"Fifth. To elect or appoint directors . . .

"Sixth. To prescribe, by its board of directors, by-laws . . .

"Seventh. To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; . . .

"Eighth. To contribute to community funds, or to charitable, philanthropic, or benevolent instrumentalities conducive to public welfare, such sums as its board of directors may deem expedient and in the interests of the association . . ."

The defendants contend that the plaintiff does not have standing to assert a claim under § 24, or in the alternative has failed to state a claim upon which relief can be granted. The plaintiff argues that the complaint does state a claim, either under the Supreme Court's decision in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), or under § 93.

### (1) *Data Processing*

The Association of Data Processing Service Organizations is an association of firms which sell data processing services to various businesses. In the above-named case, the association and one of its members, Data Processing, Inc., sought to challenge a ruling of the Comptroller of the Currency that, as an incident to their banking services, national banks may provide data processing services to their customers. Named as defendants were the Comptroller and the American National Bank and Trust Company, which allegedly was performing or was preparing to perform such services for two customers with whom Data Systems, Inc., had on-going negotiations.[4] The basis for the plaintiff's claim was that the business of providing data processing services was beyond the powers granted to national banks in 12 U.S.C. § 24.

The district court dismissed the cause for lack of standing, and this ruling was affirmed by the court of appeals.[5] The Supreme Court reversed, holding that the plaintiffs were persons "aggrieved by agency action within the meaning of a relevant statute" under the Administrative Procedure Act, 5 U.S.C. § 702. In the course of its discussion, the Court noted that Congress had expressed some concern over the protection of competitors in the enactment of § 4 of the Bank Service Corporation Act, which applies to corporations providing services to banks which in turn own the service corporation, and which provides that:

"No bank service corporation may engage in any activity other than the performance of bank services for banks." 12 U.S.C. § 1864.

The Court found that this concern, together with the allegation of actual economic loss, was sufficient to give the competing data processing service organizations standing to challenge the administrative ruling. 397 U.S. at 152, 156, 90 S.Ct. 827.[6]

In *Data Processing,* the Court declined to rule on the merits of the question whether the provision of data processing services was beyond the range of activities permitted by the National Bank Act. In a subsequent case, *Investment Company Institute v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971), the Court did reach the merits of a similar case, and held that the operation of a collective investment fund did violate certain express limitations on

---

4. The plaintiff in *Data Processing* also prayed for damages, *see* D.C., 279 F.Supp. 675. There apparently is no reported decision indicating whether damages were awarded on remand.

5. 279 F.Supp. 675 (D.Minn.1968), 406 F.2d 837 (8th Cir. 1969).

6. Similarly, in *Arnold Tours, Inc. v. Camp,* 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970), the Court found that independent travel agents have standing to challenge a ruling of the Comptroller that banks may provide travel services to their customers.

the activities of national banks contained in 12 U.S.C. § 24.[7]

Since both cases sought judicial review of regulations promulgated by the Comptroller, neither *Data Processing* nor *Investment Company Institute* raised the precise question whether a private litigant could bring an action directly against a bank or its directors for redress against violations of § 24. Nevertheless, at least one court has held that individual travel agents and their national association can sue for injunctive relief against a bank's implementation of a proposed travel club, *American Society of Travel Agents, Inc. v. Bank of America N. T. & S. A.*, 385 F.Supp. 1084 (N.D.Calif. 1974); and the Court of Appeals for the District of Columbia has suggested that such an action would be proper, *New York Stock Exchange v. Bloom*, 183 U.S.App.D.C. 217, 562 F.2d 736 (D.C. Cir. 1977), *but cf. C. A. R. Leasing, Inc. v. First Lease, Inc.*, 394 F.Supp. 306, 310 (N.D.Ill.1975) (dicta).[8]

However, the Seventh Circuit has held that even if a right of action is implied under § 24 in favor of competitors, this does not mean that every party arguably injured by violations of the section may directly sue a bank or its directors. In *Russell v. Continental Illinois National Bank and Trust Company of Chicago*, 479 F.2d 131 (7th Cir. 1973), the plaintiff alleged that she and other members of the public invested in an "open-end mutual fund" established by the defendant bank in violation of the same express prohibitions of the National Bank

Act involved in *Investment Company Institute* —12 U.S.C. §§ 24 and 378.[9] The plaintiff sought damages suffered as a result of the fund's purchase of a large block of the common stock of Penn Central Company, which was both an obligor and depositor of the bank.

Justice Stevens, then a judge on the Seventh Circuit, reasoned that while *Investment Company Institute* may suggest that a private right of action should be implied in favor of a competitor, the position of a fund participant is quite different. In particular, the court found that a fund participant was not within the class of persons intended to be protected by the statute, because the statute was designed to minimize the risk of loss to the bank itself, not to fund participants:

> "The basic reason for the legislation does not reflect a concern that the bank will be less capable of performing the activity efficiently than other entrepreneurs; rather it reflects a desire to minimize the risks of loss or insolvency to the bank itself." 479 F.2d at 133.

*Citing Thompson v. St. Nicholas National Bank*, 146 U.S. 240, 13 S.Ct. 66, 36 L.Ed. 956 (1892), the court found in addition that an award of damages in favor of a fund participant would in fact frustrate the act's fundamental goal of securing the solvency of national banks. 479 F.2d at 134.

■ In this case, the plaintiff is not within the class of persons, bank depositors, which the National Bank Act was designed

---

7. 12 U.S.C. § 24 (Seventh) provides in part that the "business of dealing in securities and stock by the association shall be limited to purchasing and selling such securities and stock without recourse, solely upon the order, and for the account of, customers, and in no case for its own account . . ." In part, the Court found that the investment fund involved dealing in securities for the bank's own account, in violation of this provision. The Court also relied on the express prohibition on the underwriting of stock issues contained in 12 U.S.C. § 378(a).

8. In this connection, the defendants cite *Thompson v. Saint Nicholas National Bank*, 146 U.S. 240, 13 S.Ct. 66, 36 L.Ed. 956 (1892), where the Court held that a defendant in a suit to enforce loan obligations may not assert the

invalidity of the loans under the National Bank Act. However, this case does not stand for the general proposition that a private right of action can never be implied under the National Bank Act, but only that such violations may not excuse loan obligations, *see Russell v. Continental Illinois National Bank and Trust Company*, 479 F.2d 131, 134 fn. 12 (7th Cir. 1973); *but see Noel Estate v. Commercial National Bank in Shreveport*, 232 F.2d 483, 485 (5th Cir. 1956); *Winegar v. First National Bank of Merritt Island*, 267 F.Supp. 79 (M.D.Fla.1967). Nevertheless, *Thompson* does highlight the fact that primary enforcement of the National Bank Act is left to the Comptroller of the Currency.

9. See footnote 7, *supra*.

to benefit. Indeed, as in *Russell*, an award of damages in this case would undermine the precise policy the act was designed to implement. Thus, this is not an appropriate case in which to imply a private cause of action under 12 U.S.C. § 24.

### (2) *§ 93 of the National Bank Act.*

The plaintiff argues that even if no private right of action is implied directly under § 24, he still may sue the directors for damages caused by the violation under § 93 which provides as follows:

> "If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited . . . And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation." 12 U.S.C. § 93.

The plaintiff argues that the defendants' alleged financial support of the state litigation constituted a "violation" of the limited grant of powers contained in § 24 and therefore can provide a basis for personal liability of the directors. However, the plaintiff has not offered any case law in support of this interpretation, except *Chesbrough v. Woodworth*, 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917). That case did adopt a broad interpretation of "any other person" which included members of the general public, but the violation involved therein was of the express requirement that a true and accurate report be filed with the Comptroller. This case does not provide any guidance on the question whether the enumeration of powers contained in § 24 itself imposes a duty, the breach of which will form the basis of personal liability of the directors.

Similarly, the Supreme Court's rulings in *Data Processing* and *Investment Company* *Institute* do not answer this question. Although the Court spoke of a "violation" of § 24 in those cases, there is no indication that the Court even considered the significance of § 93 to such a case.

Finally, the court has located two early cases in which bank directors were held liable for *ultra vires* activities by the bank, *see Atherton v. Anderson*, 86 F.2d 518 (6th Cir. 1936), *reversed on other grounds*, 302 U.S. 643, 58 S.Ct. 53, 82 L.Ed. 500 (1937); *Anderson v. Akers*, 7 F.Supp. 924 (W.D.Ky. 1934), *rehearing denied*, 9 F.Supp. 151, *supplemented*, 11 F.Supp. 9 (W.D.Ky.1934). However, these decisions do not address the precise issue involved here, and cannot be taken as establishing a general rule that any expenditure beyond that authorized in § 24 can give rise to a federal damage claim under § 93. Such a rule would have the effect of federalizing the entire corpus of tort law with respect to bank officers and directors.

The Supreme Court has indicated that the National Bank Act should not be given such a broad scope. In *Yates v. Jones National Bank*, 206 U.S. 158, 27 S.Ct. 638, 51 L.Ed. 1002 (1907), the Court considered the provision now codified as § 93:

> " . . . the section thus comprehends all the *express commands to do or not to do*, as to directors, contained in the national bank act . . ." 206 U.S. at 177, 27 S.Ct. at 644. (Emphasis added.)

In *Yates*, the Court held that this provision provided the exclusive remedy for violations of the commands of the statute, and thus that liability could not be imposed on the basis of mere negligence. At the same time, the Court made clear that the provisions applied only to violations of *express* requirements; by implication, at least, this would foreclose the plaintiff's theory that § 93 provides a basis for a federal claim in this case.

Finally, acceptance of the plaintiff's theory would require a tortured reading of both § 24 and § 93. Section 24 is not worded in terms of a duty to do or not to do anything.

Rather, it is designed to describe the certification and powers of national banks. This purpose is made clear in the preamble:

"§ 24  Corporate powers of associations

"Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, shall in the name designated in the organization certificate, it shall have power—"

This provision is in contrast to others which clearly impose certain obligations on the banks and their directors, *see, e. g.,* 12 U.S.C. § 84; *First National Bank of Lincolnwood v. Keller,* 318 F.Supp. 339 (N.D.Ill. 1970).[10]

■ Similarly, § 93 is directed primarily towards actions for dissolution brought by the Comptroller. As the Supreme Court indicated in *Yates,* a fair reading of the provision would limit its scope to violations of the "express commands" of the statute. The plaintiff's allegations of "unauthorized" expenditures do not meet this requirement.

Accordingly, Count I does not state a claim upon which relief can be granted under the National Banks Act.

### B. *Count II—The Low-Rent Housing Act.*

Again, the plaintiff has cited no authority in direct support for his argument that a private right of action can be implied in his favor under the Low-Rent Housing Act, 42 U.S.C. § 1401, *et seq.* Indeed, the plaintiff does not cite any particular provision of the act which the defendants are alleged to have breached. Instead, the plaintiff insists that by financing the state litigation, the defendants frustrated the purposes of the Low-Rent Housing Act, and that an action for damages should be implied in his

favor because as a developer, he is an intended beneficiary of the act.

■ The criteria for evaluating when a private remedy should be implied from a federal statute are set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Therein, the Court listed four factors:

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" (Citations omitted.)  422 U.S. at 78, 95 S.Ct. at 2088.

■ Applying these criteria to the case at hand, it is clear that the plaintiff, as a developer and contractor, is not within the "especial" class of persons for whose benefit the statute was enacted, *cf. Chapman v. First National Bank of Highland Park,* 585 F.2d 223 (7th Cir. 1978). The preamble of 42 U.S.C. § 1437f states clearly that the act is intended for the benefit of lower-income families:

"For the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing  . . ."

On this basis, a private right of action has been implied in favor of low-income families eligible for public housing, *Silva v. East Providence Housing Authority,* 423 F.Supp. 453, 464 (D.R.I.1976). Although it is true, as the plaintiff argues, that the act creates incentives to encourage the construction of low-income housing, this does not warrant

---

10. § 24 imposes such an express obligation in only one instance, not applicable here. That is the limitation on dealings in stocks and securi-

ties involved in the *Investment Company Institute* case included in a part of subsection 24 (Seventh), see footnote 7, *supra.*

the conclusion that developers are the intended beneficiaries of the act.

Similarly, although the legislative history does indicate that Congress intended to encourage the construction and development of low-income housing, there is no indication of an intent to provide special protection in the form of a private right of action. Indeed, under the third criteria, although such a cause of action may not directly frustrate the purposes of the act, it certainly is not essential to them.

Finally, the claim asserted by the plaintiff is one traditionally handled under state tort law. There appears no reason to infer a cause of action based solely on federal law in this case.

Accordingly, Count II does not state a claim upon which relief can be granted under the Low-Rent Housing Act.

### C. *Count III—Common Law Tort.*

■ Jurisdiction over this count is claimed under the doctrine of pendent jurisdiction, as articulated in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L:Ed.2d 218 (1966). However, in view of the fact that the court has determined that Counts I and II should be dismissed, there are no federal claims to support pendent jurisdiction. Accordingly, Count III will be dismissed for lack of jurisdiction.

Accordingly, the defendants' motion to dismiss is hereby granted; the cause is hereby dismissed.